## ALLIS *v.* STOWELL.

*Circuit Court, E. D. Wisconsin.* April, 1883.

1. PATENT LAW—INFRINGEMENT—RECOVERY OF PROFITS AND DAMAGES BY PAT-
ENTEE AS AFFECTING RIGHTS OF A USER, ETC.

Where a patentee recovers from an infringing manufacturer full damages and profits on account of the infringement, the purchaser from such manufacturer, who is a user of the machine, will be protected in such use against a suit for infringement, as he would be if he were a licensee from the patentee. But this could only be held on a clear showing that the purchaser was using the same patented machine or instrument as that involved in the suit between the patentee and the infringing manufacturer, and that the user was a vendee of such manufacturer.

2. SAME—PROFITS AND DAMAGES MUST BE ACTUALLY PAID.

It would seem from the authorities that, to effect such a result as stated above, it must further appear that the patentee's claim to profits and damages against the manufacturer has been actually paid and satisfied.

3. SAME—INJUNCTION—MULTIPLICITY OF SUITS.

To prevent a multiplicity of suits the court may, in a proper case and upon a proper showing, require the prosecution of suits between the patentee and the mere user of a patented machine to be suspended, and await the result of a suit pending between the patentee and the principal infringer, from whom the user purchased the machine; but it should conclusively appear, to justify such interposition, that the patented article involved in the suits against the users was purchased by them of the defendant in the principal suit for infringement, and that it is identical in character with that involved in the suit against the principal infringer.

In the Matter of the Application of John M. Stowell for an injunction to restrain Edward P. Allis from prosecuting certain suits for infringement of the Beckwith patent, in Iowa, Illinois, and Michigan.

*Flanders & Bottum*, in support of application.

*W. G. Rainey, contra.*

DYER, J. From the records of this court in the litigation between Edward P. Allis and John M. Stowell upon what is known as the Beckwith patent, and in part from the allegations of the petition of Stowell and the answer of Allis thereto, which constitute the basis of the present proceeding and which will be hereafter referred to, the following facts appear:

In 1877 the respondent, Allis, as the owner of said patent, commenced a suit in this court against the petitioner, Stowell, to establish the validity of the patent, to restrain the infringement thereof, and for an account of profits and damages. The case was duly submitted to the court, and on the ninth day of February, 1880, an interlocutory decree was entered, adjudging the patent valid; and as Stowell, in the opinion of the court, had infringed the first claim of the patent, an injunction was granted, restraining such infringe-

ment, and the case was sent to a master to take an account of profits and damages.

The patented device is an improved saw-mill dog, and, as it is described in the patent, "consists in constructing the standards with wide-bearing faces for the logs, and in providing each with a central vertical slot or mortise, through which a series of hooks are projected to grasp a log or cant. The lower hook is curved upward to catch into the lower edge of the log next the standard, and the upper hooks are curved downward to catch into the face of the log. The lower hook and the series of upper hooks, therefore, move in opposite directions to grasp the log between them and prevent it from slipping. The hooks are operated simultaneously by a lever from the back of the standard, and by a suitable system of connecting bars."

The patentee made three claims, which, slightly abbreviated, are as follows: " (1) In combination with the standard for saw-mill carriages, the hooks, C, D, adapted to be simultaneously projected in opposite directions through the central vertical slot in the face of said standard; (2) the combination of hooks, C, and connecting bars, F, I, with the operating lever and the hook, D; (3) the combination of the supporting guard-plate, K, with a slotted standard, and the hooks, C, D, and their attachments." In the suit referred to, the court, upon examination of the devices exhibited to it on the hearing, and which the proofs showed were being manufactured and sold by Stowell, was of the opinion, as already stated, that the first claim of the patent had been infringed, but did not then think that a case of infringement of the second and third claims had been established. The master to whom the case had been referred proceeded to take testimony. In the course of the proceedings before him the complainant in the suit sought to include, as part of the subject-matter of the accounting, what are known as attachment dogs, which are dogs attached to the standards, and which do not exhibit the feature of slots in the face of the standard itself, through which the hooks are projected. The defendant objected to the consideration of those devices on the ground that they were not covered by the interlocutory decree, which was limited to the first claim of the patent, and the master sustained the objection. Under this ruling, the accounting, as it is understood, would include only about 25 saw-mill dogs manufactured and sold by Stowell, and covered by the terms of the interlocutory decree.

The proceedings before the master are still pending. At one stage of those proceedings, it being claimed that Stowell, subsequent to the entry of the interlocutory decree and the granting of an injunction, had manufactured and sold the so-called attachment dogs, and that said dogs were infringements of the first claim of the patent, and were, therefore, covered by the decree, the complainant in the suit instituted and prosecuted a proceeding to punish Stowell for contempt in the alleged violation of the injunction granted by this court; in which proceeding the court held that as there was doubt whether the attachment dogs infringed the first claim of the patent, it would not determine such question of infringement in the contempt proceeding, but gave Allis leave either to file a supplemental bill in the original suit, which should present the question whether the attachment dogs infringed the pat-

ent, or to file an original bill in a new suit, wherein a contest upon that question could be made. Accordingly, Allis began a new suit against Stowell, which is now at issue on bill and answer, and in which it is sought to enjoin the manufacture and sale of the attachment dogs, and, as it is understood, any other form of saw-mill dog made and sold by Stowell which it may be claimed is an infringement of either claim of the Beckwith patent.

Pending the proceedings before the master in the first suit, Allis brought numerous suits against persons in Iowa, Illinois, and Michigan upon the Beckwith patent, alleging infringement of said patent, and seeking to enjoin the use of certain saw-mill dogs in the mills of the parties defendant in those suits, on the ground that they were infringing devices. These suits are now in progress in the courts where they were commenced.

In January, 1882, the present petitioner, Stowell, filed a petition in this court, asking for an injunction restraining Allis from prosecuting the suits in Iowa, and one suit then pending in Illinois, until the controversy between the parties here should be disposed of. This application was heard on the petition and answer thereto, and the court declined to grant the injunction prayed for, but gave to the petitioner the right to take proofs in support of the allegations of his petition, and to renew his application for an injunction after such proofs should be taken. Nothing further was done under that petition until the twenty-ninth day of January, 1883, when, on motion of the petitioner, the proceeding was dismissed, without prejudice.

On the thirteenth day of February, 1883, a new petition was filed by Stowell, which stands entitled in both the causes now pending in this court between these parties, the prayer of which is that Allis may be restrained from taking any further proceedings in the suits in Iowa, Illinois, and Michigan until the cases in this court are disposed of, and from instituting, or threatening to institute, any new suits or other legal proceedings on account of the infringement of the Beckwith patent by any of the vendees of the petitioner, Stowell, or of the firm of Filer, Stowell & Co. This petition alleges the pendency of the suits in this court, and of the suits in the states named, and, generally, the condition of the litigation between the parties; that the suits in Iowa, Illinois, and Michigan are against persons and firms who purchased saw-mill dogs from Filer, Stowell & Co., and that these dogs are the subject of the accounting now pending in the first suit, brought in this court; on information and belief, that Allis, by the prosecution of the suits in question, is seeking to harass and injure the petitioner, Stowell, in his business and trade with saw-mill owners, and with the defendants in those suits; and that he, Stowell, is pecuniarily responsible, and able and willing to pay any damages or profits which it may be decreed he shall pay in the cases pending in this district. The averments of injury to the petitioner, if Allis is permitted to proceed with the suits in other states and to institute additional suits, are amplified and repeated in various forms in the petition.

The answer of the respondent controverts some of the allegations of the petition, and sets up affirmatively, as reasons why the prayer of the petition should not be granted, many of the matters of record in the cases in this court between these parties, hereinbefore referred to.

At a former hearing of this matter the court held that as the first petition for an injunction had not been diligently prosecuted, and as there had been what the court thought was unreasonable delay in that respect on the part of the petitioner,—the Iowa suits having been, meantime, got ready for hearing on the proofs,—it would not interfere with the prosecution of those suits, but would remit the petitioner and the parties in interest to such remedy by way of injunction, or application therefor, as they might have, if any, in the court where the suits were pending.   In *Rumford Chemical Works* v. *Hecker*, 5 O. G. 645, 646, one of the grounds on which a similar application was denied was that it was not made before the parties proceeded against had been put to the trouble and expense of taking their proofs for final hearing in the principal case.   So far, therefore, as the continued prosecution of the Iowa suits is concerned, the present application must be regarded as already disposed of.

With reference to the Illinois and Michigan suits, the evident theory of petitioner's counsel is that the defendants in those suits are Stowell's vendees; that the saw-mill dogs used by those defendants in their business and involved in the suits referred to were purchased from Stowell, or Filer, Stowell & Co., and are actually included in part in the accounting in the first suit pending here, and in part in the second suit of *Allis* v. *Stowell;* that if Allis shall ultimately have decrees for profits and damages in these cases, and if Stowell shall fully pay and satisfy such decrees, such payment and satisfaction will operate as a license to the Illinois and Michigan parties to use the mill-dogs which they have purchased from him, and to discharge any claim that Allis might otherwise have against them for damages and profits, and for an injunction in the suits which he has commenced in those states; and that to prevent a multiplicity of suits the court will enjoin Allis from prosecuting the cases in other districts until the main controversy between the manufacturers is determined.

Admitting the general principle involved in this statement of the case to be sound, the question still is, are the necessary facts sufficiently shown to the court to warrant it in applying the principle?

The rule as to when a recovery by a patentee against an infringer will carry the right to use the patented device, is well stated in *Perrigo* v. *Spaulding*, 13 Blatchf. 391, 392.   In that case the court said:

" Where the patentee sells his patented instrument or machine for use by others, finding his remuneration in the profit of the sale of the manufactured machine or instrument, it is obvious that his interest is promoted by increasing the sale, and that into his profit enters the value of the patented inven-

tion over and above the cost of manufacture and the ordinary fair profit of the manufacture. Even if no patent or license fee is fixed, the value thereof, as a profit, enters into the selling price, and, if not capable of exact ascertainment, may, nevertheless, be approximated to by estimation, when necessary. When the patentee sells, he receives this profit, and thus obtains full compensation for the article sold, and for the right to use it while it lasts. When, for an infringement, he obtains both the profits and damages, he will be presumed to have obtained a full compensation for all the injury he has sustained, and to be placed in as good a position as if he had made and sold the article itself. * * * When a patentee manufactures and sells his patented article for use, the right to use passes by the sale. If an infringer manufactures and sells, he must account for and pay the profits, which are to be calculated upon the principle that the gain by the appropriation of the patentee's invention is their measure. If there are damages sustained and proved by the plaintiff, beyond the profits made by the infringer, these also may be recovered. But, when a full recovery and satisfaction from one party has been had, the patentee has obtained all that the law gives him, and the particular article or machine, if it be a machine, becomes in effect licensed by the patentee, and may be used so long as it lasts, free from any further claim by the patentee."

In eff. c' the same principle was recognized in *Gilbert & Barker Man'f'g Co.* v. *Bussing*, 12 Blatchf. 426, and in *Spaulding* v. *Page*, 4 Fisher, 641.

"The recovery of profits and damages from the manufacturers of an infringing machine debars the patentee from recovering from a user for the use of the same machine," where the user purchased the machine from the infringing manufacturers. *Booth* v. *Seevers*, 19 O. G. 1140, and cases there cited. These adjudications indicate the law to be, that where a patentee recovers from an infringing manufacturer full damages and profits on account of the infringement, the purchaser from such manufacturer, who is a user of the machine, will be protected in such use against a suit for infringement, as he would be if he were a licensee from the patentee. But this could only be held on a clear showing that the purchaser was using the same patented machine or instrument as that involved in the suit between the patentee and the infringing manufacturer, and that the user was a vendee of such manufacturer; and under the authorities it would seem that to effect such a result it must further appear that the patentee's claim to profits and damages against the manufacturer has been actually paid and satisfied. But, apart from this phase of the question, I am of the opinion that to prevent a multiplicity of suits the court may, in a proper case and upon a proper showing, require the prosecution of suits between the patentee and the mere user of a patented machine to be suspended, and to await the result of a suit

pending between the patentee and the principal infringer, from whom the user purchased the machine. Undoubtedly the court has the power to exercise restraining control over the litigation where the principal parties are before it. The important question in such a case would seem to be, when may the power be rightfully and properly exercised?

In *Birdsell* v. *Hagerstown Agricultural Implement Manuf'g Co.* 1 Hughes, 64, it was held that where a suit upon a patent is pending against the defendant, who is manufacturing and vending an article claimed to be an infringement of the patent, and it appears to the court that the defendant is responsible for such profits and damages as may be assessed against him as the result of the suit, the court may in its discretion enjoin the complainant from bringing suit against the vendees of the defendant. It is true that upon the state of facts presented in *Rumford Chemical Works* v. *Hecker,* 5 O. G. 644, Judge BLATCHFORD ruled that the court would not, on mere motion, enjoin the plaintiffs in a bill for infringement from prosecuting suits which they had commenced before other courts for the recovery of damages such as they were endeavoring to obtain in the suit pending before it, especially after the plaintiffs had been allowed to proceed so far in the foreign suits as to commence taking accounts; and thought it doubtful whether the court would in any proceeding enjoin the plaintiffs from prosecuting whatever suits they might choose to prosecute in the courts of other districts. But in the case of *Barnum* v. *Goodrich,* lately pending in the northern district of Illinois, the circuit judge of this circuit exercised the power questioned in *Rumford Chemical Works* v. *Hecker, supra.* Barnum was the patentee of a sewing-machine device or attachment known as a tucker, and sued Goodrich in Illinois as an infringer who was manufacturing tuckers in the city of Chicago. Thereafter Barnum brought suits against the Remington Empire Sewing-machine Company and the Wilson Sewing-machine Company, in the northern district of New York, to restrain the sale by those companies of tuckers which they had purchased from Goodrich; and as it thus appeared that the defendants in the New York suits were the vendees of Goodrich, and were selling tuckers manufactured by Goodrich in Chicago, and which were the identical subject-matter of the suit in Illinois, the court held that the principal controversy in Illinois between the patentee and the manufacturer should be first determined, and restrained the prosecution of the New York suits pending the suit of Barnum and Goodrich. Upon the strength of this ruling, and upon a like state of facts

being shown, I would not hesitate to interpose in the same manner by injunctional order.

Without considering any of the other defensive matters set up in the answer to the present petition, the question is whether, upon the allegations of the petition and answer, such a case is made for the interference of this court by injunction as was presented in *Barnum* v. *Goodrich* and *Birdsell* v. *Hagerstown Agricultural Implement Manuf'g Co.* That a case should be clearly made out to justify such interposition will not be disputed. In other words, it should conclusively appear, as a fact affirmatively shown, that the mill dogs involved in the Illinois and Michigan suits were purchased by the users thereof from Stowell or his firm, and that they are identical in character with those involved in the suits pending here; so that an adjudication of infringement in the suits between Allis and Stowell will in effect embrace the machines involved in the foreign suits. Such a state of facts would bring the case within the rule enforced in *Barnum* v. *Goodrich.*

The general allegation of the petition is "that said Allis  *  *  * has commenced a large number of suits for the alleged infringement of said letters patent to said Nelson F. Beckwith against the persons and firms who purchased said devices and saw-mill dogs from said firm of Filer, Stowell & Co., and which devices were made the subject of the accounting, on the reference aforesaid," (meaning the reference to the master in the first suit commenced and still pending in this court.)

The further and more specific allegation of the petition, referable specially to the Illinois and Michigan suits, is:

"That said Allis is a rival manufacturer of saw-mill machinery and saw-mill dogs, and is endeavoring to gain an advantage unjustly over this defendant by suing said vendees of said Filer, Stowell & Co. in said causes, in all which the defendants are, as deponent is informed and believes, using the identical devices embraced in the accounting before said  *  *  *  special master."

The allegations of the answer on the subject are as follows:

"And affiant denies, on information and belief, that all the defendants " (meaning the defendants in the Illinois and Michigan cases) " are using devices or saw-mill dogs which were purchased by them from said Stowell or his firm, and are included in the accounting before said master. On the contrary, respondent states, on information and belief, that several of said defendants have used in their mill saw-mill dogs very different in construction from any shown to have been made by said Stowell, some of them designated as the Tabor dog, another as the Tabor-Cunningham dog, and others not known by

name, but all of which embrace in their construction devices which it is claimed fall within or are infringements of said Beckwith patent. And it may be true that some of the defendants have used dogs that were purchased from said Stowell or his firm. This respondent cannot tell, nor can said Stowell tell whether such of said defendants may not have also used other devices and dogs which as clearly infringe said Beckwith patent as the dogs made by said Stowell."

A further allegation of the answer is that "this respondent has not, so far as he knows, sued any person who has purchased from said Stowell, and used any of said twenty-five dogs alone," (meaning 25 certain dogs involved in the pending accounting between Allis and Stowell,) "without also using other dogs which likewise infringe said patent, whether made by said Stowell or other person, nor, so far as respondent knows, has he sued any person who has used any of said twenty-five dogs."

Thus stand the averments of the petition and answer upon this question of the alleged identity of the mill dogs involved in the cases pending in this court, and in the cases brought in the courts of Illinois and Michigan; and upon the issues thus made the court cannot say that such identity is established with the clearness requisite to justify the issuance of an injunction restraining the prosecution of the foreign suits. As I have said, to authorize this court to interpose in the manner asked, it should be satisfied that the defendants in the Illinois and Michigan cases are vendees of Stowell or his firm, and that there is involved in that litigation the very devices involved in the cases here, and none other. If any of the suits in other districts involve not only machines purchased from Stowell, but other mill dogs not purchased from him, which the complainant in those suits claims infringe the Beckwith patent, manifestly this court could not interfere with the prosecution of those suits. It could not restrain in part and permit in part the prosecution of the cases. It would have no right to issue an injunction which should have the effect to split up the cases, enjoining their prosecution as to some branches of the controversy and permitting it as to others. It could only rightfully interfere, as before stated, where it was made plain that the cases involved mill dogs purchased from Stowell, and of the same kind or construction as those involved in the suits in this court, and brought in question no other or different devices claimed to be an infringement of the patent. Such was the state of the case in *Barnum* v. *Goodrich*, and, as I understand it, in *Birdsell* v. *Hagerstown Agricultural Implements Manuf'g Co.*

The allegations of the petition in reference to this question of the identity of the mill dogs are general, and, so far as they refer specially to the Illinois and Michigan suits, are on information and belief. Upon the issue raised on that subject by the petition and answer, the case is one that requires proofs.

Reference was made in the argument to a case decided by Judge BLODGETT, in the northern district of Illinois, wherein he is said to have restrained suits by the patentee against the vendees of an infringing manufacturer. The case is unreported, and for certainty of information I have consulted Judge BLODGETT with reference to it, and am advised that the patented article in question was an article of food which was held for sale by dealers who had purchased from the manufacturer. There was no doubt at all that the article thus purchased and held by dealers was the very same, and only the same, as that involved in the controversy between the patentee and the manufacturer. The court could, therefore, see that the right to restrain the suits brought or threatened against the dealers was plain and undoubted. While the court will, if desired, refer this proceeding to a master to take proofs upon the issues raised by the petition and answer, it seems to the court more suitable that the question, whether the prosecution of the suits in Illinois and Michigan should be stayed to await the result of the cases here, should be remitted to the courts where those suits are pending, and for the reason that those courts can more directly take cognizance and be advised of what is involved in the cases before them than can this court, and, in the state of the litigation here between Allis and Stowell, can be easily advised of the claims of the owner of the patent in the two suits pending in this court.

The injunction prayed for must be denied, and the restraining order heretofore granted will be dissolved.