UNITED STATES PRINTING CO. v. AMERICAN PLAYING–CARD CO.

(Circuit Court, W. D. Michigan, S. D. July 26, 1895.)

1. PATENTS—WHAT CONSTITUTES INVENTION—COMBINATIONS.
    There is patentable invention in forming a new combination of old elements, so as to produce new and valuable results, in the increased safety and efficiency of the machine, and the great enhancement of the profits resulting from its operation.

2. SAME—INFRINGEMENT SUITS—PRIOR SETTLEMENT FOR DAMAGES.
    A settlement with a manufacturing infringer for damages, as distinguished from profits, does not bar the patentee from maintaining a subsequent suit against a user of the manufactured machine. A settlement or judgment for damages relates only to past damages, and has no reference to the future.

3. SAME—NOTICE OF PATENT—PLEADING DEFENSE.
    Failure to mark the patented machine with notice of the patent is not available as a defense unless it be set up in the answer and established by proof.

4. SAME—MACHINE FOR PRINTING CARDS.
    The Murray patent, No. 381,716, for an improvement in a machine for printing playing cards, *held* valid and infringed.

This was a suit in equity by the United States Printing Company against the American Playing-Card Company for alleged infringement of a patent for an improvement in machines for printing playing cards.

Arthur v. Briesen, for complainant.
Boudeman & Adams, for defendant.

SAGE, District Judge.    This suit is for infringement of patent No. 381,716, issued April 24, 1888, to the Russell & Morgan Printing Company, as assignee of Samuel J. Murray, for an improvement in a machine for printing cards.

The present complainant, the United States Printing Company, is the Russell & Morgan Printing Company, under a name adopted, under due process of law, on February 20, 1891.

The patented improvement is a contrivance for punching playing cards. The 52 prints for a complete pack of cards are printed on a single sheet of paper. The sheet is then cut into strips, and fed to the machine, to be punched, one card at a time. This work requires great accuracy, that perfect cards, not distinguishable one from another by the appearance of their backs, or by the sense of touch, may be produced. To this end, they must not only be of uniform size, but the design for the back must have an even margin on all sides, and exactly the same on every card. The complainant's machine is an improvement on the Bliss single-feed machine, referred to also in the record as the "Bliss & Williams single-feed machine." In that machine the strip of card prints was fed by the hands of the operator directly under the punch, so that on its every downward movement a card was cut out. The punch was held suspended by a spring during the insertion of the strip. The push of the operator's foot upon a treadle threw into action a clutch, and the punch then descended by the action of the main shaft. While in its upward position, a clamp to the left of the die was held open by suitable mechanism, and the strip was inserted under the clamp, and between the jaws of a feeding device, which were opened and closed mechanically. When the operator started the machine, the clamp pressed on the strip, and held it firmly during the process of punching. Simultaneously with the lifting of the punch, the clamp was raised, and the jaws of the feeding device closed on the strip, and moved to the right, in the direction of the punch, far enough to bring the next card slip into position. The clamp then closed on the strip, the feeding device returned to its starting point, and the punch was brought down. When all the cards were punched out from the strip, the operator stopped the machine, the clamp and feeding jaws were again automatically held open, a fresh strip was inserted, with its first card under the punch, and the machine again set in operation. A suitable gauge was provided to enable the operator to adjust the strip so that the separate cards would be punched out uniformly, and with even margins.

Among the chief disadvantages of this machine were the danger to the operator's fingers in feeding the strips, and the lessened

punching capacity resulting from the frequent stoppage of the machine to insert new strips and adjust the gauge. In placing the strip in position, the hand was brought into close proximity to the punch, so that the pressure of the treadle by the foot an instant too soon was liable to result in cutting off the operator's fingers. It is in testimony that, in the course of a few years' operation of these machines in the complainant's manufactory, 15 or 18 girls lost portions of their fingers in this way.

The complainant's patent shows an additional, supplementary, or auxiliary feeding mechanism to carry the card strip to the feed, which had been used in the Bliss & Williams machines, at the same time providing an adjustable gauge in such relation to this auxiliary feed mechanism as to effect the essential requisites of indicating the correct placing of the strip in order to insure the accurate punching out of the card slips. This was accomplished by adding to the single feed a second feed, which took the material from the operator, and fed it to the single feed, which thereby became the main feed. By this means the strip was placed in position in the auxiliary feed at such a distance from the punch that the danger of maiming the operator was entirely avoided. There was the additional advantage that a new strip could be placed in the auxiliary feed, and adjusted by gauge to its correct position, while the machine was still at work upon the preceding strip, and the necessity for stopping the punch whenever a new strip was to be used was obviated. The gauge was so contrived and adjusted that, instead of being in connection with the main feed, it was in connection with the auxiliary feed, making it practicable to operate the punch continuously and without intermission.

The defense is that there is no invention nor patentable combination in this new mechanism, but only an aggregation of old elements. I am not able to concur in this view. A careful examination of the testimony and of the machine itself has satisfied me that, although the elements of the combination claimed in the patent are old, the combination itself displays invention. A new and valuable result has been obtained. The safety and efficiency of the machine have been greatly enhanced, and the profits resulting from its operation greatly increased. The opinion of the court is that the complainant's patent is valid, and that the defendant infringes.

It was argued upon the hearing that the defendant's machines were freed from the patent by reason of the fact that they were made by the Bliss Manufacturing Company, with whom complainant had previously settled for its damages for infringement. Whether damages can be collected from the manufacturer of the machine, and further damages from a subsequent purchaser and user of the same machine, was fully considered in Birdsell v. Shaliol, 30 O. G. 261, 112 U. S. 485, 5 Sup. Ct. 244, by the supreme court, which held that an infringer does not, by paying the damages for making and using a machine in infringement of a patent, acquire

any right to the future use of the machine, and that, on the contrary, he might, in addition to the payment of damages for past infringement, be restrained by injunction from further use, and, when the whole machine is an infringement of the patent, be ordered to deliver it up to be destroyed. That case has been cited with approval in Callaghan v. Myers, 46 O. G. 565, 128 U. S. 617, 665, 9 Sup. Ct. 177; Tuttle v. Matthews, 36 O. G. 694, 28 Fed. 98; Bragg v. City of Stockton, 27 Fed. 509, 510; Filter Co. v. Schwarzwalder, 58 Fed. 577, 579; Kelley v. Manufacturing Co., 54 O. G. 659, 44 Fed. 19; Mill Co. v. Coombs, 48 O. G. 255, 39 Fed.803; and Thompson v. Bank Note Co., 45 O. G. 347, 35 Fed. 203–205. The cases to the contrary cited by defendant were decided prior to Birdsell v. Shaliol, and are virtually overruled by that case. Where a patentee takes a decree for profits against a manufacturing infringer, he thereby sets the manufactured machine free. The distinction is obvious. In such cases the profits of the infringer are full compensation to the complainant for the wrong done him by the unauthorized manufacture and sale of the infringing machine; but, where there is merely a settlement or judgment for damages, it is only for damages in the past, and has no relation to the future.

It was also objected upon the hearing that defendant was not liable, in view of the alleged failure to mark the patented machine with notice of the patent. That is a matter of defense which was not pleaded, and which, to be available, must be set up in the answer, and established by proof. Rob. Pat. § 1046; Goodyear v. Allyn, 6 Blatchf. 38.[1]  In that case Judge Blatchford said that there were several answers to this objection, which was first made there, as it is here, on the hearing: First. That it did not appear by the bill that the plaintiffs, or either of them, had ever made or vended any articles under the patent, and that that fact was not shown by the defendants. Second. If that fact had appeared, either by bill or otherwise, it would be for the defendants to show a failure by the plaintiffs to mark, as required, the articles made or vended, and then the burden of proof would be on the plaintiffs to show that, before suit was brought, the defendants were duly notified that they were infringing that patent, and that they continued, after such notice, to make or vend the article patented. Third. That the failure to mark would only have the effect to prevent the recovery of damages. It would not affect the right to an injunction.

Judge Blatchford also held that it was questionable whether the statute would apply to a suit in equity, because damages could not be recovered in equity. That ruling, however, was under the patent act of 1836, which did not provide for damages in causes in equity, as the statute now in force does provide. This defense was not pleaded, and it appears in evidence that the defendant company was, before they procured their infringing machines, notified of the complainant's patent, a copy of which was shown to them, and that they

[1] Fed. Cas. No. 5,555.

were warned that they must steer clear of it. That defense is, therefore, not well taken.

The decree will be for the complainant, for an injunction and an account.