COMMERCIAL ACETYLENE CO. v. AVERY PORTABLE LIGHTING CO.

(Circuit Court, E. D. Wisconsin. December 22, 1906.)

1. INJUNCTIONS—SUBJECTS OF INJUNCTION—SUITS IN OTHER JURISDICTIONS.
    A federal court of equity has power to enjoin either party to a suit
    before it from prosecuting other suits subsequently brought relating to
    the same subject-matter, where it would be contrary to equity and good
    conscience, although such suits may be in foreign jurisdictions.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 69,
    72, 73.]

2. SAME—PATENTS—INFRINGEMENT—RESTRAINING MULTIPLICITY OF SUITS.
    Where the owner of an unadjudicated patent has brought suit against
    a rival manufacturer to enjoin infringement of such patent and to re-
    cover profits and damages on account of the manufacture and sale of an
    alleged infringing device, in which suit both the validity of the patent
    and infringement are put in issue, the court may, and should, on a proper
    showing, enjoin the complainant from instituting· a multiplicity of suits
    in different parts of the country against customers of the defendant, who
    are charged with infringement solely by reason of the sale or use of
    defendant's device, until the issues are determined in the principal suit
    before it. As to such suits which were commenced before the applica-
    tion for injunction was made, however. the defendant will be left to his
    remedy by applying for a stay to the courts before which they are pend-
    ing.

In Equity. On petition by defendant for injunction.

This is a suit in equity commenced on the 24th day of July, 1906, based up-
on United States letters patent No. 604,383 and No. 727,609, for acetylene gas
tanks. An answer was filed September 29th, in which the invalidity of the
complainant's patents is asserted on various grounds, and infringement is
denied. At the same time the complainant filed another bill in this court
against the Pressed Steel Tank Company of Milwaukee, Wis., based on the
same patents. The averments of the two bills are identical, except that the
Pressed Steel Tank Company is charged with being the manufacturer of all
the tanks sold and distributed by this defendant, and with confederating with
this defendant to enable it to sell and put upon the market tanks that were
known to infringe complainant's patents. An answer in such last-named suit
was promptly interposed, setting up substantially the same defenses. Thus it
appears that this court acquired original jurisdiction of the subject-matter
of said two suits, wherein the two chief alleged infringers are made defend-
ants and this happened before any other court acquired jurisdiction over such
subject-matter.

On the 4th day of October, 1906, the defendant filed a petition in this court
setting up the facts above stated, and further alleging:

"That, shortly after the commencement of the two suits above enumerated.
suit was commenced in the United States Circuit Court, Northern District
of Illinois, Eastern Division, by the complainant herein against Excelsior Sup-
ply Company, of Chicago, Ill., the bill of complaint in the last-named suit being
substantially· identical with the bill of complaint herein; and that the answer
in said suit was filed on October 1, 1906, the day it was due under the rules.

"(5) That since the commencement of the present cause the following suits
have been begun by the Commercial Acetylene Company, the complainant here-
in, against the following: In the United States Circuit Court, Southern Dis-
trict of New York, against the Motor Car Equipment Company. In the United
States Circuit Court, Southern District of New York, against Wyckoff, Church
& Partridge, Inc. In the United States Circuit Court, Northern District of
Ohio, against W. D. Strong Company. In the United States Circuit Court,
Southern District of Ohio, against the Curtin-Williams Auto Company. In
the United States Circuit Court, Western District of New York, against the
Centaur Motor Company. In the United States Circuit Court, District of

Minnesota, against the Pence Automobile Company. In the United States Circuit Court, Western District of Missouri, against Brick Motor Car Company.

"(6) That, as your petitioner is informed and believes, the bills of complaint in each of the above cases are substantially identical with the bill of complaint herein.

"(7) That each of the defendants named in paragraph 5 hereof is a purchaser of petitioner's gas tanks, and is in fact a customer of petitioner's, each one handling petitioner's goods in the respective locality in which each is located.

"(8) That petitioner is informed and believes that each of the defendants named in paragraph 5 hereof handles no other gas tanks except those manufactured by your petitioner, unless it be the gas tanks manufactured by the Concentrated Acetylene Company of Indianapolis, Indiana, and known as 'Presto-Lite Tanks,' and that the said Concentrated Acetylene Company is a licensee of the Commercial Acetylene Company, the complainant herein, so that the only reason for suing each of the defendants above referred to for patent infringement is for the purpose of reaching the tanks which said defendant has purchased from your petitioner, and which are of your petitioner's manufacture.

"(9) That your petitioner manufactures only one form or style of tanks (although in different sizes), and has sold to the above defendants only one particular form or style of tank, a sample thereof being herewith produced in court and marked 'Exhibit A.'

"(10) That your petitioner believes, and therefore charges the fact to be, that the complainant herein has begun said suits against your petitioner's customers for the purpose of annoying and harassing your petitioner and its customers, and for the purpose of putting your petitioner to unnecessary and burdensome expense in defending each of the suits above mentioned, whereas the entire question of the validity of the patents, of infringement thereof by the tanks of petitioner's manufacture, and the question of recovery of profits and damages could be tried in the present cause without the burden of defending a multiplicity of suits scattered all over the United States.

"(11) That your petitioner is financially responsible and amply able to respond to any amount which may be taxed by this court against your petitioner as profits or damages arising out of infringement on complainant's patents by the manufacture and sale of all of petitioner's product, should the court in the present cause hold your petitioner to be an infringer."

Prayer for an order restraining complainants from commencing any further actions, either at law or in equity, against any purchaser or user of tanks manufactured or sold by defendant, for infringement of said patents pending the final hearing of this cause; and that complainant be enjoined from prosecuting any of such later suits against customers of defendant, etc.

This petition was supported by an affidavit of P. C. Avery, president of the defendant corporation, showing that on March 27, 1906, he obtained United States letters patent No. 816,059, for a gas tank to handle acetylene gas; that, as he has been advised by his attorneys and believes, his invention does not infringe the claims of the complainant's patents or either of them; and that the defendant is operating as a licensee under his patent, and is shipping tanks over the United States, and that it had before the bringing of this suit built up an extensive and increasing business in the sale of such tanks. Complainant filed an answer to such petition, admitting the bringing of the suits in various circuits, but expressly denying any purpose of annoying or harassing defendant or its customers, contending that it was not able to recover in the two suits instituted in this court all the damages to which it is entitled for the unlawful invasion of its monopoly. Thereupon, on the 25th of October, the defendant filed a second affidavit of P. C. Avery, and gave notice to complainant that it would be used on the hearing of the petition for injunction. This affidavit sets forth the fact that complainant was giving out to the trade certain circulars, and the court is asked to enjoin the complainant from sending out or causing to be distributed said trade circulars. The first circular complained of is dated August 1st, signed by the complainant, and sets out the fact that complainant is the owner of the two patents named in the bill; that the tanks manufactured at Milwaukee by defendant are believed to be in-

fringements of said letters patent; and notifies all persons to abstain from the use or sale of same, and that all who use or sell infringing tanks will be liable to damages. The second circular, dated October 18, 1906, is addressed to the automobile trade, refers to the former circular of August 1st, above described, and then proceeds to give a list of suits already brought by it, whereby it appears that, aside from the suits brought in this court, ten later suits in equity, based upon the complainant's patents, have been brought in other circuits. Then follows a statement that the papers are being prepared for suits against numerous other concerns in different cities, and that the Presto-Lite gas tank is the only one licensed by complainant.

It appears that three or four additional suits were brought by complainants after the petitioin was filed and before the hearing thereon.

F. A. Geiger and Chamberlin & Wilkinson, for the motion.
Bartlett, Brownell & Mitchell, opposed.

QUARLES, District Judge (after stating the facts). It is undisputed that the defendants in the ten suits brought by complainant in other circuits are the vendees of the defendant, whom defendant is morally, not legally, bound to protect and defend in this litigation. It further appears that the defendant is manufacturing only one type of gas tank, although of various sizes. So that the issues raised in all the suits will be practically identical. That complainant's patent No. 664,-383 was granted on the 25th of December, 1900, which, by mesne assignments, became the property of complainant on the 3d day of June, 1901. The other of complainant's patents, numbered 727,609, was issued on the 12th day of May, 1903, and by assignment became the property of complainant on the 19th day of April, 1904. That, prior to the bringing of the suits in this court, neither of the complainant's patents had been subjected to the test of legal adjudication.

Complainant challenges the power of the court to make the order prayed for. This is naturally the first proposition requiring attention. It is contended that jurisdiction here is limited to the making of such order or decree as may determine the issues raised by the pleadings and that it has no authority to make any order whose purpose is to control the action of either party beyond the territorial limits of the court. The complainant has come into this tribunal seeking equitable relief and has submitted itself to the jurisdiction of the court. The power in such case to proceed in personam against either litigant to protect the jurisdiction, or the subject-matter, or to prevent either party from doing with regard to the subject-matter of the suit what is contrary to equity and good conscience has always been assumed and exercised by the chancery courts of England as well as by the several courts of chancery in the states. Either party may in a proper case be enjoined from prosecuting another suit although it may be pending in a foreign state or country. 1 High on Injunction, §§ 106 to 111, and cases cited: Story's Eq. Juris. §§ 899, 900; 1 Bates' Federal Eq. Procedure, § 454; Home Ins. Co. v. Howell, 24 N. J. Eq. 238; Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; Akerly v. Vilas, 15 Wis. 402; Berliner Gramophone v. Seaman, 113 Fed. 750, 753, 51 C. C. A. 440; Lord Portarlington v. Soulby, 3 Mylne & K. 104.

While the doctrine of exclusive jurisdiction in the court first obtaining jurisdiction of the subject-matter does not apply to a case where

complainant brings independent suits in several courts involving the same question, it is nevertheless true that the main issue involving the validity of a patent and the question of infringement ought to be litigated between the patentee and the principal infringer in the jurisdiction where such supposed infringement is centered, and, where the first suit brought is against that principal infringer, such suit is properly regarded as a parent suit where the leading issues in controversy should, for obvious reasons, be tried. Other suits may be brought against vendees or users, if that be done in good faith, for the sole purpose of protecting the rights of the complainant. But if, before any adjudication, the patentee shall bring a multiplicity of suits for the purpose of harassing and annoying a rival manufacturer, for the purpose of subjecting him to burdensome expense, and to destroy his business by exciting terror among his customers, it would seem that there must reside somewhere the power to intervene and protect the defendant against such a crusade until the validity of the patents already challenged may be established in the courts. Instances are not wanting where patentees make illicit use of the courts as instrumentalities of oppression; bring a multiplicity of suits, purposely scattered through the circuits, not for the honest purpose of securing an adjudication in support of the patent, but to crush a rival manufacturer by creating a stampede among his customers; alarming them by circulars breathing threats of prosecution, denouncing the product of the rival concern as an infringing device, at the same time taking no step to bring any of the numerous suits to final hearing.

Judge Blodgett refers to this practice in Emack v. Kane (C. C.) 34 Fed. 46, and cites an instance where a patentee, having excited general consternation in the trade, which he turned to his commercial advantage, dismissed his suits where the validity of his patent had been put in issue. In such a case the defendant is powerless. He may be prepared to demonstrate that the complainant's patent is invalid, or that his own structure does not infringe; but, during the considerable period which must elapse before the vital questions can be brought to final hearing, his customers may desert him through fear of litigation, and he may be driven to the wall. It cannot be that a court of equity is powerless to prevent such a wrong. In Emack v. Kane, supra, referring to circulars distributed by the patentee among the trade, Judge Blodgett says:

"It shocks my sense of justice to say that a court of equity cannot restrain systematic and methodical outrages like this by one man upon another's property rights."

Perhaps the leading case cited by complainant is Kelley v. Ypsilanti Dress Stay Company (C. C.) 44 Fed. 19, 10 L. R. A. 686. A careful perusal of this case discloses that the application for the injunction was there made in one of the later cases to enjoin proceedings in the earlier case. The learned judge says that he never before heard of such a case, for presumably the earlier case had been brought against the principal infringer. Although holding that relief should be withheld in that particular case, Judge Brown in his opinion says:

"In this view of the law it was held that to prevent a multiplicity of suits the court might, in a proper case and on a proper showing, require the prosecution of suits between a patentee and a mere user of a patented machine to be suspended, to await the result of the suit between the patentee and the principal infringer from whom the user purchased this machine—a doctrine in which we fully concur, although we think the application should be made to the courts in which these suits are pending."

In Allis v. Stowell (C. C.) 16 Fed. 783, 787, Judge Dyer says:

"But apart from this phase of the question, I am of opinion that to prevent a multiplicity of suits the court may, in a proper case and upon a proper showing, require the prosecution of suits between the patentee and a mere user of a patented machine to be suspended, and await the result of a suit between the patentee and the principal infringer from whom the user purchased the machine. Undoubtedly the court has the power to exercise restraining control over the litigation where the principal parties are before it."

The learned judge also in his opinion refers to an unreported case, Barnum v. Goodrich, decided in the Northern District of Illinois by Judge Drummond, Circuit Judge, wherein it was held that complainant should be enjoined from prosecuting numerous suits until the principal controversy in Illinois between the patentee and the manufacturer should be first determined.

In Ide v. Ball Engine Co. (C. C.) 31 Fed. 901, 904, the court holds that public policy would seem to favor the rule that litigation for the purpose of ascertaining and sustaining the validity of a patent should be between the patentee and the alleged infringing manufacturer.

The same doctrine was held in National Cash Register Co. v. Boston Cash Co. (C. C.) 41 Fed. 51, the opinion being by Judge Colt.

In New York Filter Co. v. Schwarzwalder (C. C.) 58 Fed. 577, Judge Lacombe, though denying the relief sought, says:

"As to the proposition that the court will interfere on any theory of preventing multiplicity of suits, there is nothing now submitted to show that such multiplicity is to be apprehended, even if a motion of this kind be the proper remedy. There is only one suit now pending, and nothing to indicate that suits are about to be brought against other users until there has been some adjudication of the rights of the owner of the patent in its suit with the manufacturer. If, when complainant has prevailed in that suit (should he so prevail), has established the validity of his patent and shown that the infringing apparatus which defendant makes and sells is an infringement, users of such infringing machines refuse to accept that result and individually insist upon continuing their use, complainant may sue each and all of them, though they number 10,000, without thereby instituting such a multiplicity of actions as the courts will enjoin."

See, also, Birdsell v. Manufacturing Co., 1 Hughes (U. S.) 64, Fed. Cas. No. 1437, citing two unreported cases.

In Farquhar v. National Harrow Co., 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755, the Circuit Court of Appeals for the Third Circuit held that equitable relief might be granted against a party who was in bad faith sending notices and trade circulars among the customers of a rival, solely for the purpose of destroying the business of such manufacturer. The same doctrine was held in Adriance Platt v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163, by the Circuit Court of Appeals, Second Circuit.

In Warren Featherbone Co. v. Landauer et al., 151 Fed. 130, there is an opinion by Judge Bunn, then District Judge of the Western Dis-

trict of Wisconsin, concurred in by his honor, Judge Seaman, wherein the doctrine of Emack v. Kane, supra, Farquhar v. National Harrow Company, and Adriance Platt v. National Harrow Co., are cited with approval.

Complainant cites the case of Rumford Chemical Works v. Hecker, 11 Blatchf. 552, Fed. Cas. No. 12,132. While an excerpt from the opinion might seem favorable to complainant's contention, an examination of the case will differentiate it in two important particulars, First, there had been in March, 1873, a final adjudication holding certain claims of the complainant's patent valid, and an accounting had been completed in the main case before the other suits were brought, the earlier of which was commenced in September, 1873. Second, the court concludes the opinion with the suggestion:

"Moreover, the application, to be entertained at all in respect to the New Jersey and South Carolina suits, should have been made before plaintiffs had been put to the trouble and expense of taking their proofs for final hearing."

The complainant contends that these several authorities above cited are overruled by the Supreme Court in Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, 28 L. Ed. 768. A question arises how far the doctrine of that case is applicable to the case at bar. In Birdsell v. Shaliol the question for determination was the effect of a prior judgment for nominal damages, and no reference is made to the effect of a complete recovery by a patentee of gains and profits as well as damages. In the present bill complainant charges that defendant has been guilty of making or causing to be made, using or causing to be used, selling or causing to be sold, the alleged infringing devices, in Milwaukee and elsewhere within the United States. In its prayer the bill asks that the defendant may be decreed to account for and pay over the gains and profits realized by the said defendant by its unlawful acts, and, in addition, the damages sustained by the complainant. It is contended that an accounting under such a bill will completely compensate the complainant for the invasion of the three elements of his monopoly, and that, such decree having been complied with, the infringing device would be released from the monopoly. In support of this position, defendant cites United States Printing Company v. American Company (C. C.) 70 Fed. 50, 53. I shall not now stop to consider this question, because in my judgment Birdsell v. Shaliol, even as construed by complainant, is not decisive of the present application. If complainant's interpretation of the Birdsell Case be correct, it has simply demolished one of the principal grounds upon which injunctive aid has been granted in the earlier cases; but it does not exclude the power of the court in a proper case to prevent oppression wrought by means of multiplicity of suits brought for a commercial advantage rather than honest adjudication. In my judgment no additional suit, either at law or in equity, should be brought by complainant against the purchasers or users of the defendant's tanks, for infringement of complainant's patents, until the validity of such patents and the question of infringement have been adjudicated. I direct that an order be prepared to that effect.

I am asked to restrain the further prosecution of the 10 suits brought by complainant in other courts. In view of the decision in Birdsell v. Shaliol, I think the better practice is to allow the defendants in those suits, or this defendant in their behalf, to make suitable application to the courts where such suits are pending, to stay proceedings until these principal questions have been adjudicated. There may be urgent and proper reasons why some further proceeding may justly be had in some of them. I therefore decline to enjoin complainant from all further proceeding therein.

Complainant insists that the injunction asked for will not prevent the running of the statute of limitations against actions to recover damages. That is undoubtedly a sound proposition, and on that account I deem it my duty to speed this case, and to that end I direct the clerk of this court to enter an order giving the complainant 10 days after January 1, 1907, within which to make its prima facie proofs. Thereupon the defendant may have 40 days to submit its proofs, and thereafter the complainant to have 30 days to present its proofs in rebuttal. I will hear the case promptly as soon as the proofs have been taken, so that a conclusion may be speedily reached.

As to the circulars distributed by the complainant, I do not think they disclose upon their face any evidence of bad faith or malice. The language is temperate, and I do not think they have thus far exceeded the extent to which the patentee is permitted to go in advising the public of the complainant's rights under his patent, and to warn them of the consequences of infringement. One clause in the second circular is open to criticism, but complainant's counsel assures the court that it was inserted without his knowledge or advice. If, however, the complainant shall continue to memorialize the trade with further literature, a new application may be made for suitable relief, and this decision is without prejudice to a renewal of such application.