## COMPUTING SCALE CO. v. NATIONAL COMPUTING SCALE CO.

## SAME v. HOYT et al.

(Circuit Court, N. D. Ohio, E. D. March 31, 1897.)

PATENTS—INJUNCTION.

    In a suit for injunction and damages for infringement, the court will not, upon motion of defendants, enjoin complainants pendente lite from suing users of the alleged infringing machine, or from warning users by letters or advertisements, the title of defendants never having been adjudicated.

These were two suits in equity brought by the Computing Scale Company, the one against the National Computing Scale Company, and the other against Frank C. Hoyt, Charles A. Hoyt, and George B. Hoyt, partners as Hoyt & Co., for an injunction and damages for the infringement of a patent. Heard on motions by defendants for temporary injunction.

Church & Church, for complainant.

Thurston & Bates, for defendants.

SAGE, District Judge. The complainant and the defendant·the National Computing Scale Company are engaged in the manufacture and sale of spring balance computing scales, each claiming to conduct the business under a patent owned and controlled by it. The defendants Hoyt & Co. are selling agents and solicitors of the National Computing Scale Company, and, as such, sell all the scales manufactured by the defendant the National Computing Scale Company directly to retailers and users, such as butchers and grocers, and not to wholesale dealers. The first ground of the motion is that the complainant, well knowing that these retailers and users are generally parties of limited capital, who cannot afford to become parties to a suit, and by the fear of being sued for an infringement of complainant's patent would be as effectually prevented from buying defendants' scales as if the defendants were restrained by an injunction, is seeking to intimidate the trade, and maliciously to injure the defendants, by sending out circulars to the trade in the territory in which the defendants operate, which circulars contain covert threats to sue mere users of said scales, and also contain "the false and misleading statements that the said complainant owns all the foundation patents on computing or price scales, and that it has important infringement suits pending in the United States courts in different parts of the country against manufacturers and users of infringing scales." The following is a copy of the circular referred to:

"Warning!    Consult Your Attorneys.

'All persons are warned against using and infringement on weighing and price scales and computing and price scales. The simple using of infringing scales makes the user just as liable to prosecution as the manufacturer or selling agent.

"We own all the foundation patents on computing or price scales, and have created and established the market and demand for such scales.

"Before buying scales not made by us, you will save yourself much litigation and expense by consulting us or your attorneys respecting the question as to

whether such scale is an infringement on our patents.   We will be pleased to furnish you or your attorneys with more specific information on the question of infringement when you inform us what kind of machine you are offered.
        Respectfully,       The Computing Scale Co., Dayton, O., U. S. A.,
                                      "Per Ira C. Koehne, Attorney.
"Washington, D. C., and Dayton, Ohio.
"We have important infringement suits pending in the United States courts in different parts of the country, against manufacturers and users of infringing scales, and we will soon bring other suits."

The defendants complain, further, that the same circular is published as an advertisement in numerous newspapers and trade papers, and that, while it does not specifically mention defendants' scales, the trade understands that it refers to said scales, as evidenced by letters from persons who have purchased from defendants.

Defendants further say that, so far from it being true that the complainant owns all the foundation patents on computing scales, the fact is that more than 17 patents for such scales have already expired, and that, prior to the granting of the patent in suit, there were more than 25 patents on spring balance computing scales.

The motion, which covers eight pages of legal-cap type-written paper, enters into many details.    These it is not necessary to specify. It winds up with a prayer for a temporary injunction to restrain complainant, its officers, agents, solicitors, attorneys, and counsel, from bringing suit against any mere user of the computing scale manufactured by the defendants until the complainant's suit is finally determined; second, from threatening to sue such users or prospective customers of defendants; third, from publishing circulars and advertisements containing open or covert threats to sue mere users; and, fourth, from publishing circulars and advertisements which state that complainant owns all or any foundation patents on computing or price scales, and from in any way circulating statements of similar import calculated to convey the impression that all computing scales are subservient to patents owned by the complainant.    Neither the complainant's patent nor the defendants' has been adjudicated to be valid.

Counsel for defendants rely upon Emack v. Kane, 34 Fed. 47, Casey v. Typographical Union, 45 Fed. 135, and Barr v. Trades Council, 53 N. J. Eq. 101, 30 Atl. 881.    These cases rest upon the same general proposition.    In each case there was an admitted trespass (in Emack v. Kane, admitted facts from which the trespass was conclusively deduced).    In each the resulting injury was irreparable, and the publications were mere incidents or means employed to make the trespass more effective, and to increase the injury.    Judge Blodgett, in Emack v. Kane, expressly recognized the doctrine laid down by Mr. Justice Bradley in Kidd v. Horry, 28 Fed. 773, that an injunction will not be granted to restrain even a malicious libel, and that there is no jurisdiction in the United States courts of equity to enjoin a libel on the rights of an owner of letters patent.    But Judge Blodgett pointed out the distinction between those cases and Emack v. Kane, by calling attention to the fact that the gravamen of Emack v. Kane was the attempted intimidation by defendants of complainant's customers, by threat-

ening them with suits which defendants did not intend to prosecute,—a feature not involved in Kidd v. Horry. He said:

"Redress for a mere personal slander or libel may perhaps properly be left to the courts of law, because no falsehood, however gross and malicious, can wholly destroy a man's reputation with those who know him; but statements and charges intended to frighten away a man's customers, and intimidate them from dealing with him, may wholly break up and ruin him financially, with no adequate remedy if a court of equity cannot afford protection by its restraining writ."

The complainant in that case sought to restrain the defendants from making threats intended to intimidate the complainant's customers, under the pretext that complainant's goods infringed a patent owned or controlled by defendants, and from making threats that, if such customers dealt in complainant's goods, they would subject themselves to suit for such infringement; "the bill charging and the proof showing that these charges of infringement were not made in good faith, but with a malicious intent to injure and destroy the complainant's business." The proof showed that the defendants brought three suits against Emack's customers, for alleged infringements of the patent involved; that Emack assumed the defense in these cases, and, after the proofs were taken and the suits ripe for hearing, the defendants voluntarily dismissed them, the dismissals being entered under such circumstances as to fully show that the defendants knew that they could not sustain the suits upon their merits; that they were brought in a mere spirit of bravado or intimidation, without intent to submit the question of infringement to a judicial decision.

In Casey v. Typographical Union the rule that an injunction will not issue to enjoin the publication of a libel was fully recognized; but it was affirmed, and not denied, that the Typographical Union had set on foot a boycott against the complainant, as stated in the bill and in the affidavits on file. That boycott was to be enforced by threatening loss of business to those who, having no connection with the union, should continue to advertize with or in any way patronize the complainant. The attempt was by coercion to destroy all competition affecting the union. It was an organized conspiracy to force the complainant to submit himself to the control of the union, even to the extent of yielding his right to select his own workmen. The court said that, in the light of the facts and of the authorities cited, it was idle to attempt to maintain that the publications put forth by the defendant were nothing more than libels, and that the only remedy for any injury resulting was by an action at law. In Barr v. Trades Council the publication enjoined was a circular issued by the Trades Council, to boycott the complainant's newspaper, and to cease buying and advertising in it. In all these cases the trespass upon the right of the complainant was either admitted, or so clearly established as not to be open to question. This view puts these cases in harmony with the general rule that, in order to give a court of equity jurisdiction to enjoin trespass or torts to property or property rights, "two conditions must concur: First, the complainant's title must be admitted or established by a legal adjudication; and, second, the threatened injury must be of such a nature as will cause irreparable dam-

age, not susceptible of complete pecuniary compensation." Beach, Inj. § 1126, and cases cited.

Grand Rapids School Furniture Co. v. Haney School Furniture Co., 92 Mich. 558, 52 N. W. 1009, is also cited in support of the motions. In that case a manufacturer and patentee was restrained from using a decree fraudulently and collusively obtained, to the injury of the complainant, who was engaged in a like manufacturing business, and from claiming that the decree was an adjudication upon the merits as to the validity of the patent, or from using the decree in any way or form to influence any person against purchasing the articles manufactured by the complainant, who, as claimed, was infringing said patent; it being admitted that the complainant was able to establish the absolute invalidity of the patent in any court having jurisdiction of the question, and was lawfully entitled to its use. It is not necessary to point out the distinction between that case and the case at bar.

In the case now before the court the defendants' title to the property rights, which it claims was invaded, is the very question at issue in the suit pending against them. They are sued as infringers, and their title has never been adjudicated. This alone is an insuperable objection to their prayer for an injunction. The same objection applies to their contention that the injunction should be issued to prevent the multiplicity of suits. "In cases of repeated trespasses, where it is necessary to quiet a rightful, admitted, or established possession, chancery has often interposed to prevent a multiplicity of suits, although there may be a remedy at law," etc. Beach, Inj. § 1130. In the same section it is further stated that, "in addition to the rule mentioned, it seems to be clearly settled that, whenever the complainant's title is disputed, a court of equity will not interfere by injunction, or make perpetual an injunction already granted, on the ground of a multiplicity of suits, until he has procured his title to be established by a successful trial at law." In a footnote to the section the authorities in support of the text are cited. The passage quoted relates to the title to real estate, but is applicable because the title or the right of the defendants to manufacture and sell scales is denied by the complainant, who claims that they are infringers. The defendants' patent is, as they claim, prima facie evidence of their rights under it, but only prima facie, and, if this suit were not pending, would not entitle them to an injunction against persons making, selling, or using in alleged violation of it. Besides, with reference to a multiplicity of suits, this case differs materially from those in which a suit is brought by one for the benefit of all others in a similar condition to restrain the collection of a tax or assessment. Such a suit is a representative suit, and, if it result in a decree declaring the tax or assessment invalid, it will be effective against any other suit brought, because it disposes of the right to collect the tax or to enforce the assessment. But an adjudication upon a patent, even if it be by the supreme court of the United States, does not necessarily have that effect. When made by the supreme court of the United States, it is, of course, decisive against all other suits brought upon the same patent, and upon the same showing of anticipations or prior

uses. It not infrequently happens, however, that, after a decree sustaining a patent, additional anticipations and prior uses are brought to light; so that upon a second suit a stronger defense can be presented than was made upon the hearing of the first suit. Another consideration which ought to have weight is that in Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217, the supreme court held that the statutes of limitation of the several states apply to actions at law for the infringement of letters patent. Equity, although not consenting to be bound by statutes of limitation, refers to them to determine, by analogy, the limitations which it should apply, subject to the special circumstances of the particular case. Hence a patentee ought not to be enjoined from bringing suits against those who infringe by using, as well as against those who infringe by manufacturing and selling, unless upon a very strong showing, because the bringing of the suit determines to what period, ordinarily, the accounting or claim for reparation may be carried back. The defendants say that they have offered to give a bond of indemnity, and that they are perfectly able to do so. But such bond would cover only the amount of damages actually found. It would seem therefore to be proper to allow the suits to be brought, and, if a test case be pending, to continue them from term to term until the determination of the test case. That can be done, as it is done, without injunction; and, while it saves the rights of the party complaining, it relieves those sued from expense and labor of preparation until the determination of the test case.

As to the prayer for an injunction against suing users who have purchased from defendants, the complainant's bill as framed prayed for an injunction and account of profits, as well as for damages against the defendant company. Upon the argument of the motion, the bill, not having been answered, was amended by striking out the prayer for an account of profits, leaving only the claim for damages. This brings the case directly within the rule laid down in Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244. The right of the complainant, under the authority of that case, to sue the users, is undeniable; and, if the right to sue exists, the right to warn by letters, or by circulars, or by advertisements in newspapers, exists, and cannot be enjoined.

The motions are overruled.