ADRIANCE, PLATT & CO. v. NATIONAL HARROW CO. et al.

(Circuit Court of Appeals, Second Circuit. February 25, 1903.)

No. 59.

1. INJUNCTION—GROUNDS—THREATENING SUITS FOR INFRINGEMENT OF PATENTS.

The owner of a patent is acting within his rights in notifying infringers of his claims, and threatening them with litigation if they continue to disregard them; nor does he transcend his rights when, a claimed infringer being a manufacturer, he sends such notices to the manufacturer's customers, if he does so in good faith, believing his claims to be valid, and in an honest effort to protect them from invasion. But the sending of such notices in bad faith, and without any intention of bringing the suits threatened, but solely to injure the manufacturer's business, constitutes a fraudulent invasion of property rights against which it is the duty of a court of equity to grant relief by injunction.

2. SAME—GOOD FAITH—EVIDENCE.

Whether circulars and letters sent by the owner of a patent to the customers of a manufacturer of an article claimed to infringe, warning them of infringement and threatening suit, are sent in good faith and for legitimate purposes, can seldom be determined from their contents alone, and, like all questions of intent, must generally be determined by the extrinsic facts. When the manufacturer is financially responsible, and his infringement readily provable, and where the patent owner is financially able, and one who makes it his sole business to grant licenses, which places him under a duty to protect his licensees, the bringing of an infringement action against the manufacturer would seem to be the imperative proceeding; and if he delays, and attempts to effect by threats what he could compel by law, a strong inference of bad faith arises, which becomes irresistible if he refuses to bring suit for any considerable time when the alleged infringement is open, notorious, defiant, and extensive.

**8. SAME—EVIDENCE CONSIDERED.**

> Complainant was a manufacturer of a spring-tooth harrow under a patent. Defendant was the owner of a number of patents covering such implements, and its business was the granting of licenses thereunder. It claimed complainant's harrow to be an infringement of a number of its patents, and requested complainant to take licenses thereunder. Complainant sent one of its harrows for examination, claiming that it did not infringe, and, after interviews, refused to take a license, and requested defendant to bring suit to test the question of infringement. This defendant refused to do, but commenced and continued to send circulars and letters to complainant's customers threatening suits, stating in effect that complainant would not protect them, and advising them to buy of its licensees, a list of whom were sent. After suit brought by complainant to enjoin the sending of such circulars and letters, defendant for the first time commenced suits on one of its patents against several customers of complainant, which it subsequently dismissed. *Held*, that such facts were sufficient to sustain the charge that defendant was acting in bad faith for the purpose of destroying complainant's business and coercing it into becoming a licensee of defendant, and entitled complainant to an injunction.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 111 Fed. 637.

S. D. Bensley, for appellant.

H. M. Lane, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is an action in equity to restrain the defendant from the publication of circulars and letters asserting the violation by the complainant of the defendant's rights under letters patent, and threatening the complainant's customers with suits. The court below dismissed the bill.

The facts bring it within the principle of the decision of the Circuit Court of Appeals for the Third Circuit in a suit brought in the District of New Jersey against the present defendant. The doctrine there declared is well settled by the authorities, and the opinion in that case contains a sufficient citation of them without further reference. A. B. Farquhar Co. v. The National Harrow Company, 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755.

The complainant is a manufacturing corporation having its place of business at Poughkeepsie in this state, and in January, 1897, commenced manufacturing spring-tooth harrows, known as the "Buckeye Harrow," built conformably to the patent of Henry J. Case, an application for which was then pending, and which was subsequently issued to the complainant as assignee. The defendant is a New Jersey corporation, doing business at Utica in this state, which has acquired title to a great number of patents for improvements relating to spring-tooth harrows. It is not a manufacturer of harrows, but makes it its business to grant licenses upon royalties to manufacturers. Its licenses provide a uniform scale of prices for harrows and harrow parts, and bind the licensees not to sell their machines at any deduction or allow any rebate. During the season of 1897 the complainant sold about 700 harrows; in the season of 1898

it sold about 2,000 harrows; and its business promised much larger sales in the coming season.   Before its harrows were put in the market in 1897, it was informed by the defendant that they were claimed to be an infringement of some of the defendant's patents.   Correspondence and interviews ensued.   The complainant forwarded one of its harrows to the defendant for examination.   The defendant continued to assert the charge of infringement, and sought to induce the complainant to take a license.   The complainant insisted that its harrows were not an infringement, and requested the defendant to bring suit and have the question settled.   To this suggestion the defendant refused to accede, and replied in substance that it proposed to prevent the complainant from building harrows in its own way.   Thereupon the defendant commenced sending out circular letters to the complainant's customers throughout the state, the New England states, Pennsylvania, New Jersey, Michigan, and other states.   This circular contained a picture of the complainant's harrow, with the description: "The 'Buckeye' manufactured by Adriance, Platt & Company, Poughkeepsie, N. Y., and claimed by us to be made in infringement of our patents."   The circular cautioned dealers not to buy any spring-tooth harrows not bearing the defendant's license label, stating:   "We have yet to find a harrow of recent and modern construction that does not embody one or more of our patents."   The circular also contained this statement:   "We regret that we are obliged to hold the dealers responsible, but this cannot be avoided, as in many cases the manufacturers would not be able to settle our claims."   These circulars were followed by letters to the same persons, and of the same purport.   Extracts from some of them may be given by way of illustration.   The following is an excerpt from one:

"We have from time to time written you and mailed you circulars regarding your handling the Adriance, Platt & Company spring-tooth harrows, which are claimed to infringe our patents. * * * We are in duty bound to protect our licensees, their customers, and ourselves, and shall sue all dealers who persist, after our repeated warnings, in handling infringing goods. We are constantly bringing suits wherever these dealers are found.   This we shall continue to do till our rights are fully respected."

The following is an extract from another:

"It is claimed by this company that it is impossible to construct a modern spring-tooth harrow, such as can be sold at the present time, without infringing several of the numerous patents owned by us.   We do not deem it necessary to give you further warning notice than this at this time."

The learned judge of the court below was of the opinion that the defendant was acting within its rights, and that the letters and circulars were legitimate notices to infringers of these rights.   In his opinion he states:

"There is not a false statement of fact to be found in the circular quoted above, or in any of the other circulars or letters in evidence.   Necessarily, the claim of infringement is based upon opinion, but it is an opinion which a perfectly sincere and honest man might entertain.   Certainly it cannot be said that the opinion was without justification, malicious, and false."

Undoubtedly the owner of a patent is acting within his rights in notifying infringers of his claims, and threatening them with litiga-

tion if they continue to disregard them; nor does he transcend his rights when, the infringer being a manufacturer, he sends such notices to the manufacturer's customers, if he does so in good faith, believing his claims to be valid, and in an honest effort to protect them from invasion. The question whether the patent owner is acting in good faith in advertising his claims to the manufacturer's customers by circulars or letters can seldom be determined from the contents of the communication alone, and, like all questions of intent, must generally be determined by the extrinsic facts. It is always easy to frame such circulars in guarded terms, which will not commit the sender to any definite libelous charges, omitting specific statements of fact, and substituting statements of opinion; and when they are sent for an illegitimate purpose they are likely to be so framed.

When the manufacturer is financially responsible, is accessible, and his infringements readily provable, and when the patent owner is financially able, and is one who makes it his sole business to grant licenses, and is under a duty to his licensees to prosecute extensive infringers, the sending of such circulars to customers would seem to be merely a preliminary or cumulative measure, and the bringing of an infringement action the paramount and imperative proceeding. As, ordinarily, the patent owner would be prompt and zealous to assert his claims, if he halts and purposely procrastinates, and attempts to effect by threats and manifestoes that which he can compel by the strong hand of the law, a strong inference arises that he has not any real confidence in his pretensions. This inference becomes irresistible if he refuses to bring suit during a considerable period of time when the alleged infringement is open, notorious, and defiant, and so extensive as to threaten destruction to his alleged exclusive rights. The indicia of bad faith are persuasive in the present case. It is impossible to read the communications warning the complainant's customers against selling its harrows, with which the defendant seems to have flooded the country, without being led to believe that they were inspired by a purpose to intimidate the complainant's customers, and coerce the complainant, by injuring its business, into becoming a licensee of the defendant. In view of its failure to bring an infringement action, under circumstances which made an action practically compulsory, the defendant cannot shelter itself behind the theory that its circulars and letters were merely legitimate notices of its rights. We are satisfied that they were sent, not for the purposes of self-protection, but in execution of the defendant's threat to stop the complainant from building harrows by other means than legal remedies.

Until the present action was brought, the defendant contented itself with warnings and threats to the complainant's customers, and made no attempt to prosecute an infringement suit. The publicity of the complainant's suit neutralized these threats, and the defendant brought several actions against customers of the complainant. Out of its numerous patents it selected one, presumably the least infirm, as the basis of its attack upon the complainant's alleged infringing harrow. Those suits, after the proofs were taken, came to

an end by the voluntary dismissal of the bill. The inglorious conclusion of these suits may afford an explanation of the defendant's reasons for preferring to attack the complainant by the circulars and letters rather than in a court of justice.

We conclude that complainant was entitled to an injunction and an accounting. The decree is accordingly reversed, with costs, and with instructions to the court below to decree accordingly.