WARREN FEATHERBONE CO. v. LANDAUER et al.

(Circuit Court, E. D. Wisconsin. November 30, 1903.)

INJUNCTION—GROUNDS—CIRCULARS GIVING NOTICE OF SUIT FOR INFRINGEMENT OF TRADE-MARK.

It is within the rights of a complainant, who has commenced suit for infringement of a trade-mark and for unfair competition, to issue circulars to the trade stating such facts and its claimed rights, where such circulars are sent in good faith and the claims made are fairly within the scope of the bill, and their issuance will not be enjoined on petition of the defendant, on mere denials of the allegations of the bill, and in advance of a hearing or the taking of any evidence upon the issues of fact joined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 170, 171.]

In Equity.

Offield, Towle & Linthicum, for complainant.

Lysander Hill and Jacob Rothschild, for defendants.

Before BUNN and SEAMAN, District Judges.

BUNN, District Judge. This is a motion upon a petition filed by the defendants for an injunctional order against the complainant, restraining it from issuing notices or printed circulars to its customers or others warning them against purchasing defendants' goods. In order to understand the question at issue, it will be necessary to state briefly the purpose of the suit and the answer to the complainant's bill.

The suit is brought by the complainant, a corporation having its principal place of business at Three Oaks, Mich., for infringement of the complainant's trade-mark. By the allegations of the bill the complainant has, since 1884, been engaged in the business of manufacturing and selling stiffeners for garments in all parts of the United States, Great Britain, and elsewhere, made of the quill portion of feathers, to be used largely as whalebone has been used and in place thereof, under the designation of "Featherbone," which name the complainant alleges it adopted as a trade-mark, and which Edward Kirk Warren, the complainant's predecessor, caused to be registered as such in the United States Patent Office upon August 5, 1884, as No. 11,401. This stiffener is composed of cords or splints made from quills or feathers split longitudinally, closely bound together and covered by ribbon or other textile fabric. These fabrics were made in various forms and covered with ribbons of various colors. The complainant has spent over $500,000 in advertising these goods, and has built up an extensive business in their manufacture and sale. By reason of their peculiar coverings, and of said colors and ornamentation, the stiffeners manufactured by the complainant have received a distinctive character in the markets of America and Europe, and have caused them to be recognized as of the manufacture of the complainant. The complainant further alleges that the defendants well knowing the great reputation of complainant's manufacture, and designing to divert to themselves the profit and gains to which the complainant is entitled, have falsely and fraudulently conspired to put up and offer for sale, and have so put up and offered for sale, goods identical with those of complainant and containing complainant's trade-mark, and have used complainant's styles, shapes, sizes, finish, and packing, trade-names, trade-marks, sample cases, and entire business methods, in connection with their manufacture and sale of articles not manufactured by complainant, and vastly inferior to its goods, intending the same to be accepted by complainant's customers and the public as and for complainant's goods, in unfair competition with complainant, and in infringement of complainant's trade-mark; that said articles, manufactured and sold by defendants as the manufactures of complainant, are inferior in quality, put in packages and under labels so like complainant's that they are practically undistinguishable therefrom—all of which has been and is to complainant's great and irreparable loss and to the injury of the reputation of its manufacture and the obstruction of its business and the diminution of its profits; and it prays that the defendants may be en-

joined by the order of the court from all further infringement. The complainant's bill was filed on July 9, 1903, and is under oath.

The answer of the defendant the American Featherbone Company admits much of the complainant's bill as that the article manufactured by it is a useful article, having the construction, qualities, and various uses described therein, and that Warren created and gave to said new article of manufacture the name of "Featherbone," by which name it has ever since been known; also that said Warren caused the word "Featherbone" to be registered as his trade-mark for said material; also that within the past year defendant has used the name "Featherbone" in connection with its manufacture and sale of goods, known everywhere as "Featherbone." But defendant denies that complainant has any exclusive right or property in the word "Featherbone," as applied to any goods of the classes referred to in the bill of complaint, and avers that said word is public property, free to the use of everybody; that when Edward Kirk Warren, in 1882 or 1883, first conceived the idea of splitting feather quills longitudinally into small splints or fibers, binding such fibers into cords, and wrapping the cords into flat strips to make stiffeners, he appropriately named the new product "Featherbone," and on January 9, 1883, he applied for a patent, which was granted October 16, 1883, in which he stated that he had given the name "Featherbone" to his new article of manufacture; that he began the manufacture in 1883 or 1884, and has continued the same under his own name and the name of the corporation ever since; that after that time Mr. Warren, either for himself or for the company, took out several other patents for alleged improvements upon his featherbone; that one of these patents was issued February 5, 1885, and one October 6, 1885, and that all three of these patents had expired before defendant began the manufacture, and have since been public property; that defendant company was organized in the fall of 1902, after the expiration of complainant's patents, and entered upon the manufacture and sale of featherbone, as it had a right to do, and without any purpose of deceiving the public, calling itself the "American Featherbone Company" to distinguish its products from those of the complainant, the Warren Featherbone Company. Defendant denies, also, that its products are in any way inferior to those of the complainant company, but avers that they are fully equal to complainant's goods in quality and value; that it has never tried to palm its goods off as made by the complainant, but has plainly and conspicuously marked all the boxes and packages with the words, "Made by the American Featherbone Company," and that it has taken all pains to let it be known that it is fairly competing with the complainant as a rival in the manufacture of these goods; that it has not indulged in unfair competition of any description.

Upon the answer which was filed August 21, 1903, and is not sworn to, and upon a petition filed, the defendant, before any testimony has been taken in the case, moves the court for an injunctional order restraining the complainant from issuing circulars or sending notices to customers that a suit has been commenced for infringement of its trade-mark. The petition is merely a reinforcement of the allegations of the answer, and contains no essential facts not already set forth in the pleadings. In short, the allegations are more conclusions of law

and of fact than allegations of fact, and the question to be determined is whether the defendant is entitled to such relief before any testimony has been taken or final hearing had upon the merits; or, rather, in order to grant the relief, must we not decide the merits of the case in advance of a hearing? Can we assume, without evidence and in advance of a hearing on the merits, that the allegations of the defendant's answer and petition are true, and that those of the bill of complaint are unfounded? If the allegations of the bill are true, then the plaintiff is clearly entitled to the relief sought. If those of the answer and petition are true, then we think the complainant not entitled to recover, and that the defendant is entitled to the relief prayed for in the petition. But can that question be properly determined by the court without further evidence and a full hearing? Can the court take the allegations of the answer, which is not sworn to, or the allegations of the petition, which is sworn to, against the allegations of the bill, without further evidence? In other words, can the merits of the case be anticipated and determined in advance upon the bare allegations of the pleadings in the case? If the defendant came with an adjudication in another court upon the validity of the complainant's trade-mark, we might follow that without proof and grant an injunction; but, so far as appears, there has never been an adjudication of the question. Such relief has been granted in many of the adjudged cases, sometimes on the application of the defendant, though more generally upon the application of the complainant and upon final hearing, as in Emack v. Kane (C. C.) 34 Fed. 46, Adriance, Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163, and A. B. Farquhar & Co. v. Same, 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755.

Complainant moved on the hearing of the petition to have the same struck from the files, claiming that the defendant has no right to file such a petition and no right to the relief prayed for. Under the adjudged cases it seems clear that such relief as is here asked for may be granted in a proper case, as well on the application of the defendant as that of complainant. Since the case of Emack v. Kane (C. C.) 34 Fed 46, was decided, the doctrine has been affirmed in many cases. But in that case, as in most of those since decided, the doctrine has been placed upon the ground that, if the assumed owner of a patent or trade-mark neglects or refuses to bring suits, but instead thereof issues threatening notices and circulars to customers, warning them against the manufacture or sale of the supposed patented article, maliciously or in bad faith, it is only just and reasonable that a court of equity should interpose to restrain such acts, to prevent irreparable injury or a multiplicity of suits. In Emack v. Kane, Judge Blodgett first laid down the rule as follows:

"Here the complainant seeks to restrain the defendants from making threats intended to intimidate the complainant's customers under the pretext that complainant's goods infringe a patent owned or controlled by defendants, and threats that if such customers deal in complainant's goods they will subject themselves to suit for such infringement; the bill charging, and the proof showing, that these charges of infringement are not made in good faith, but with a malicious intent to injure and destroy the complainant's business. While it may be that the owner of a patent cannot invoke the aid of a court of equity to prevent another person from publishing statements denying the validity of such patent, by circulars to the trade or otherwise, yet, if the owner

of a patent, instead of resorting to the courts to obtain redress for alleged infringements of his patent, threatens all who deal in the goods of a competitor with suits for infringement, thereby intimidating such customers from dealing with such competitor, and destroying his competitor's business, it would seem to make a widely different case from Kidd v. Horry, and that such acts of intimidation should fall within the preventive reach of a court of equity. It may not be libelous for the owner of a patent to charge that an article made by another manufacturer infringes his patent, and notice of an alleged infringement may, if given in good faith, be a considerate and kind act on the part of the owner of the patent; but the gravamen of this case is the attempted intimidation by defendants of complainant's customers by threatening them with suits which defendants did not intend to prosecute; and this feature was not involved in Kidd v. Horry. I cannot believe that a man is remediless against persistent and continued attacks upon his business, and property rights in his business, such as have been perpetrated by these defendants against the complainant, as shown by the proofs in this case. It shocks my sense of justice to say that a court of equity cannot restrain systematic and methodical outrages like this by one man upon another's property rights. If a court of equity cannot restrain an attack like this upon a man's business, then the party is certainly remediless, because an action at law in most cases would do no good, and ruin would be accomplished before an adjudication would be reached."

This case was heard on the merits, and the relief was granted in favor of the complainant in the form of a decree for a perpetual injunction. But it is evident, to bring a case within the doctrine so laid down, it should appear that the threatening letters and circulars should be resorted to in bad faith, which is generally shown, as was in that case, by the complainant neglecting or refusing to bring suit. In the case at bar the complainant has shown its good faith in bringing suit against the defendant, distinctly claiming a right of property in the fanciful designation of "Featherbone" as a trade-mark, and charging the defendants with infringement. Complainant in its complaint is not claiming anything under the expired patents which the answer refers to, but makes claim generally to a right at all times and forever to the exclusive use of this term as a trade-mark. It appears from the affidavits and briefs that the complainant has several other patents issued since those of 1883 and 1885. But neither those nor the expired patents have been introduced in evidence, as no evidence has been taken in the case. Under these circumstances, how can the court upon the mere allegations of the answer and petition, which is merely a repetition of the allegations of the answer, restrain the complainant from doing what he has a right to do, provided the allegations of the bill are true that he has a property in the alleged trade-mark which the defendant is infringing?

The following is a specimen of the notices given, which clearly go no further than complainant had a right to do under its bill after suit was brought:

"Warning against Unfair Competition.

"Three Oaks, Michigan, July 13th, 1903.

"To the Trade: We desire to warn the trade against the purchase and sale of 'Featherbone' products not made and sold by us. An imitation and inferior article is being offered to the trade under our trade-mark and name 'Featherbone' and in the dress of our goods and in imitation of them.

"We have brought suit against Landauer & Co., of Milwaukee, for dealing in these fraudulent imitations in unfair competition with us, asking for an

injunction against such practice on their part and for five thousand dollars ($5,000.00) damages for their acts.

"This imitation article is made in infringement of our patents and trademarks and in unfair and fraudulent imitation of our goods, and we give this public notice so that the trade may understand our rights, our position relative thereto and our intention to stop infringement and all unfair competition.

"The Warren Featherbone Co."

It seems clear enough, from an inspection of the circulars sent out to customers by complainant, that the complainant has kept fairly within the scope of its bill; and so long as it does that no charge of bad faith or malice or intent to injure is justly chargeable. If complainant's bill be true, it has an undoubted right to warn the public against the infringement of its trade-mark; and that question should not be determined upon the mere allegations of the parties. It is easy enough to say that complainant has no trade-mark, or that, if it had, it expired with the expired patents in 1900 and 1902; but the proof on final hearing might show otherwise, and that the right to such trade-mark exists independent of such patents. The rule is well laid down in Adriance, Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163, by the Circuit Court of Appeals for the Second Circuit, as follows:

"Undoubtedly the owner of a patent is acting within his rights in notifying infringers of his claims, and threatening them with litigation if they continue to disregard them; nor does he transcend his rights when, the infringer being a manufacturer, he sends such notices to the manufacturer's customers, if he does so in good faith, believing his claims to be valid, and in an honest effort to protect them from invasion. When the manufacturer is financially responsible, is accessible, and his infringements readily provable, and when the patent owner is financially able, and is one who makes it his sole business to grant licenses, and is under a duty to his licensees to prosecute extensive infringers, the sending of such circulars to customers would seem to be merely a preliminary or cumulative measure, and the bringing of an infringement action the paramount and imperative proceeding. As, ordinarily, the patent owner would be prompt and zealous to assert his claims, if he halts and purposely procrastinates, and attempts to effect by threats and manifestoes that which he can compel by the strong hand of the law, a strong inference arises that he has not any real confidence in his pretensions. This inference becomes irresistible if he refuses to bring suit during a considerable period of time, when the alleged infringement is open, notorious, and defiant, and so extensive as to threaten destruction to his alleged exclusive rights. The indicia of bad faith are persuasive in the present case. It is impossible to read the communications warning the complainant's customers against selling its harrows, with which the defendant seems to have flooded the country, without being led to believe that they were inspired by a purpose to intimidate the complainant's customers, and coerce the complainant, by injuring its business, into becoming a licensee of the defendant. In view of its failure to bring an infringement action, under the circumstances which made an action practically compulsory, the defendant cannot shelter itself behind the theory that its circulars and letters were merely legitimate notices of its rights. We are satisfied that they were sent, not for the purposes of self-protection, but in execution of the defendant's threat to stop the complainant from building harrows by other means than legal remedies."

A similar rule has been declared in the Third Circuit in Farquhar Co. v. National Harrow Company, 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755.

The petition for an injunction is overruled.

Judge SEAMAN authorizes a note of his concurrence in this opinion.