### DITTGEN v. RACINE PAPER GOODS CO.

(Circuit Court, E. D. Wisconsin. April 27, 1908.)

1. INJUNCTION — GROUNDS — SLANDER OF TITLE—PATENTS — INFRINGEMENT — THREATENING SUIT.

Complainant and defendant were competing manufacturers of individual cigar pouches made of paper in sheets, and were the only manufacturers of the same in the United States. Each manufactured under patents. During five years defendant by letters and through its salesmen represented to purchasers that complainant was infringing its patents and threatened suits against users of his product, causing customers of complainant to refuse to give him orders and to cancel orders previously given; the result being a serious injury to his trade. It was also shown that complainant submitted a sample of his goods to defendant and requested the bringing of a suit to determine the rights of the parties; but no such suit was brought, although defendant continued to make the same representations of infringement and threats of suit. *Held*, that such representations and statements were false and malicious, and that complainant was entitled to relief in equity by an injunction and accounting for damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 171.]

2. LIMITATION OF ACTIONS—COMMENCEMENT OF SUIT--AMENDMENT OF BILL.

Complainant brought suit against a corporation to recover damages for unfair competition in trade, alleged to have been practiced during a number of years by defendant. Both bill and answer proceeded on the theory that all the acts charged, if committed, were those of defendant; but it incidentally appeared in the proofs that during a part of the time the business had been conducted by a partnership under the same name as defendant corporation, which was organized by the partners and succeeded to the property and business and assumed the liabilities of the partnership, whereupon by consent of parties complainant amended his bill to conform to the proofs and to hold defendant liable upon its assumption. *Held*, that such amendment did not introduce a new cause of action and related back to the filing of the bill, for the purpose of arresting the running of the statute of limitations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 545.]

### In Equity. On final hearing.

This is a final hearing in equity. The bill charges that the defendants have been guilty of unfair trade and competition; that complainant is, and for more than 20 years last past has been, engaged in the manufacture and sale of paper cigar pouches; that for 15 years he has manufactured and sold individual cigar pouches connected in sheets; that for 5 years last past his cigar pouches have been made in accordance with letters patent No. 662,226, issued to him November 20, 1900, and that complainant is financially respon-

sible; that the defendant, a Wisconsin corporation, has for several years been engaged in the manufacture and sale of paper cigar pouches and is asserting certain rights under various letters patent of the United States pertaining to individual cigar pouches, granted prior to the date of complainant's patent, and of but limited scope; that complainant has encroached upon none of the defendant's patents; that the parties to this suit are the only parties in the United States engaged in the manufacture and sale of such pouches; that the defendant has been fully informed of the manufacture and sale of complainant's cigar pouches, and with full details of the construction thereof for more than 5 years, and that defendant is abundantly able financially to prosecute suits for any supposed infringement of his letters patent; that defendant, for the purpose of stifling competition, and with intent to break up and destroy complainant's business, has been systematically circulating among complainant's customers and the trade generally letters representing that the complainant's pouches infringe upon letters patent owned or controlled by the defendant, and that complainant's customers will render themselves liable in damages if they use complainant's pouches; that for five years the defendant, by its numerous agents, has been making oral representations to the trade to the same effect, and has further represented that an injunction has been secured restraining the complainant from the manufacture of paper cigar pouches; that threats have been employed that suits would be commenced against any of the trade who continued to use the complainant's pouches; that thereby the defendant has made it generally understood in the trade that the defendant owned or controlled patents which would subject customers to damages if they purchased and used the complainant's pouches; that all of said representations by the defendant are false and malicious, and made in bad faith, for the purpose of destroying the complainant's business; that complainant submitted to the defendant a sample of his cigar pouch, and requested it to commence suit against him, in order that the rights of the several parties might be judicially determined, and offered to accept service of summons in any court of competent jurisdiction, and join with defendant in bringing the respective rights of the parties to an early adjudication, all of which the defendant has failed and refused to do, but still persists in continuing said false and malicious representations, and will so continue unless restrained by the court; that the complainant's trade has been seriously injured by such unfair methods; that large orders for complainant's goods have been canceled, and other customers have been deterred from giving orders which they would otherwise have given for the complainant's goods, because of the fear inspired by the false and malicious representations of the defendant; that by reason of the premises the complainant's business has been injured to the extent of $40,000, and will be entirely ruined, and the complainant's loss irreparable, unless the defendant is restrained from continuing such unfair methods. Prayer for an injunction and an accounting.

The answer admits that defendant and complainant are the only parties in the United States engaged in the manufacture and sale of cigar pouches; that it has been informed of the manufacture and sale of cigar pouches by complainant, and many of the details of the construction thereof, for more than five years; and that defendant is abundantly able financially to prosecute a suit for supposed infringement. The defendant denies that its representations heretofore made were false, malicious, or made in bad faith, and for the purpose of unfairly destroying complainant's business. Then follows a series of denials, which amount to a negative pregnant, denying various averments in the very language of the bill, which hardly enlarge the scope of the general denial, with which the answer closes.

After the proofs had been taken, complainant obtained leave to amend the bill in accordance with the proofs, as follows: "First. By inserting after the introductory clause thereof: 'That the defendant corporation succeeded, on or about January 1, 1902, to the business of a copartnership, consisting of Orville L. Parmenter, Lucius J. Elliott, and Richard T. Robinson, doing business at said Racine under the firm name and style of Racine Paper Goods Company, and took the assets and assumed the liabilities of said firm; that the members of said copartnership became the charter members of said corporation: and that the change was merely a merger of the copartnership into

the corporation.' Second. By inserting after the third paragraph of the body of the bill: 'And your orator further says: That the same kind of wrongful acts herein charged against the defendant were, prior to its incorporation as aforesaid, committed by its predecessor in business, the said Racine Paper Goods Company.' Third. By inserting in the second clause of the prayer of said bill, after the word 'defendant,' the words 'and its predecessor in business.' "

In like manner the defendant obtained leave to amend the answer in accordance with the proofs, by inserting the following allegation: "That none of the acts or doings complained of by the complainant in his bill herein, as against the individuals or partnership preceding the formation of the defendant corporation, were done within six years prior to the date of this amendment, to wit, the 4th day of February, 1908, and that any and all such acts and doings on the part of such partnership are thereby barred by the statute of limitations applicable thereto, the same to be incorporated in apt language in the answer of the defendant."

By consent of parties the following order was made relating to certain depositions taken by the defendant: "It is further ordered, by consent of parties, in relation to the admission of the depositions of Frank M. Haskell, Siegfried Raatz, and Benson S. Paige, a motion having been made to suppress the same by the complainant, that the same may be admitted and read in evidence in this cause; it being conceded that the complainant failed to receive actual notice of the examination of these witnesses, and if he had received such notice prior to their examination he would have attended and cross-examined, and that the testimony of Gratz as to letters moving him not to say anything against Dittgen & Co. is to be considered as relating only to the letters in evidence addressed to him."

George B. Parkinson, for complainant.
Winkler, Flanders, Smith, Bottum & Fawsett, for defendant.

QUARLES, District Judge (after stating the facts as above). A demurrer was interposed to the bill. The decision of Judge Seaman (164 Fed. 84) overruling the demurrer has settled the law of this case, following Farquhar v. National Harrow Company, 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755, Adriance Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163, and Emack v. Kane (C. C.) 34 Fed. 46, distinguishing the case of Francis v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165. Therefore it only remains to determine whether the proofs sustain the substantial averments of the bill.

At the outset we are met by this strange situation: Although both parties claim to have been manufacturing under letters patent, and the fact that complainant's supposed infringement has been well known to defendant for more than five years before this suit was brought, no effort has been made by it to establish its monopoly or to check the alleged infringement in the usual, orderly way. No suit has been brought against Dittgen, or against any user of his product. This circumstance goes far to impeach the good faith of representations made by defendant to the trade that complainant during all these years has been encroaching upon the claims of its patents.

The proofs now before the court render this conclusion of bad faith irresistible. Defendant is brought before a court of equity to answer for alleged false and malicious representations to complainant's customers as to its monopoly, and to answer complainant's contention that he has been operating lawfully under his own patent, and that he

has not infringed any claim of defendant's patents. Under these circumstances the defendant omits to offer in evidence either its own letters patent or that of complainant. It surrenders the basic contention. Furthermore, it is admitted by Parmenter, the general manager of defendant, that he frequently discussed with the trade the effect of a certain interference in the Patent Office; but no proof is offered to show that any such interference was ever declared, or ever decided, much less what patents or points were involved therein. In this state of the record we are forced to the conclusion that whatever claims of monopoly were made by defendant, and all charges of infringement against complainant, were falsely and maliciously made.

Another significant circumstance in the same line is that under date of April 23, 1902, complainant wrote defendant complaining of its methods and of the false representations it was making to the trade. He inclosed a sample of the pouch that he was manufacturing, for its inspection, and requested defendant, if it still thought that there was an infringement, to bring suit, and he would accept service in any court having jurisdiction. He also denounced them as "bluffers" if they dared not accede to his proposition. This letter elicited no response, except that Mr. Parmenter was away from home. Therefore defendant has practically left itself in this attitude on the record: That it was seeking to secure a practical monopoly by a system of commercial compulsion; that the process of the court was unnecessary if by its own processes it could stampede the customers of its sole competitor and secure the business for itself. The only resource left for defendant seems to have been a general denial, and we have only to settle the question of fact.

Parmenter, business manager of defendant, takes the stand and practically denies everything, except that he discussed with the trade the matter of an interference in the Patent Office. He denies that he employed threats of litigation. He is confronted by a multitude of witnesses, who appear to be disinterested, who assert the truth of the statements made in a large number of letters produced in evidence, which were written in the ordinary course of business, relating conversations with Mr. Parmenter and other of defendant's salesmen, wherein they threatened suits against any users of complainant's pouches. Not only this, but he is virtually contradicted by his own letters, written to the complainant, wherein are clearly displayed the weapons and methods to be employed in the crusade against complainant. His letters, written in 1900, under date of February 26th, May 22d, 25th, and 28th, June 5th, and December 18th, are bristling with threats of litigation and "peremptory measures" unless complainant will cease to infringe the defendant's patent. His hostile purpose, thus openly avowed, would naturally give color to his efforts to influence complainant's customers. The correspondence introduced in evidence here must convince any candid person that some one has for several years carried on a vigorous campaign directed against complainant, and that it has been in large measure successful. Numerous instances are given where orders that had been placed with complainant were countermanded because of the threats of Parmenter and

other salesmen of defendant. The effort seems to have been success-ful so far as to disseminate a general fear among the trade and a general impression that an injunction suit had already been brought against Dittgen, so that it would be hazardous for any dealer to buy the complainant's product. A naked denial is not persuasive against such a showing as is made by complainant's proofs.

In fixing the responsibility for the wide-spread consternation of the trade, matters are simplified by the fact that there were but two com-petitors in the field. There was no one, aside from defendant, who is shown to have any motive for diverting the trade of complainant. For the same reason it was unnecessary for the defendant's salesmen to assail the complainant by name. The work could be more safely and effectively done by vague insinuations, exciting fear of customers lest they subject themselves to an attack by defendant, armed and equipped with a number of patents. The studied instructions to sales-men, sworn to by them, indicate the skill with which the campaign was managed so as to leave no trace of malice in the letter book, or formal instructions.

It is the settled policy of the courts to restrain the illicit use of let-ters patent to maliciously injure the trade of competitors, whether the methods chosen are a multiplicity of suits brought against users to inspire terror and divert the trade (Commercial Acetylene Co. v. Avery Co. [C. C.] 152 Fed. 642), or circulars maliciously and persistently distributed among the trade threatening suit against all users of the alleged infringement, not for the legitimate purpose of giving notice of the patentee's claims, but to terrify the customers of the alleged infringer. The same remedy is appropriate and may be necessary when the patentee avoids any adjudication and shuns the court entire-ly, thus denying all opportunity to attack his patents or to secure a ruling on the question of infringement, while at the same time he en-forces his monopoly by a systematic crusade among the customers of his competitor, threatening suit and dire consequences unless his claims under his patent are respected.

Letters patent should not be used as the Chinese formerly employed a horrible image to frighten an enemy. If such a campaign be skill-fully conducted for a series of years, as seems to have been the case here, the competitor is helpless. His orders are countermanded, old customers desert him through fear of litigation, or demand bond of indemnity as a condition for placing orders. His business is melting away. Everywhere the trade is apprehensive of "peremptory meas-ures" if they buy goods of an infringer. He appeals to the patentee to bring suit, and offers to enter an appearance in any court having jurisdiction, but all to no purpose. Customers will not listen to his explanations or denials, and, unless he can get relief in a court of equity, his business, which represents 20 years of effort, may be en-tirely ruined by a competition which is malicious and unfair. These are, in brief, the considerations which underlie the ruling of Judge Seaman on the demurrer, as I understand it. See, also, Warren Co. v. Landauer (C. C.) 151 Fed. 130.

It remains to consider the plea of the statute of limitations, which was interposed by way of amendment after the close of the proofs, as to any alleged cause of action which arose during the period when the Racine Paper Goods Company was a copartnership, and antecedent to the formation of the defendant corporation. The question arises in this way: "The Racine Paper Goods Company" was a copartnership up to January 4, 1902, when it was converted into a corporation, retaining the same name, carrying on the same business, inheriting the same assets, consisting of the same persons, and, unfortunately, continuing the same business methods. The corporation assumed all the debts and liabilities of the copartnership. Both bill and answer, as originally framed, proceed upon the theory that the Racine Paper Goods Company had from the beginning been a continuing corporation. Proofs were taken on both sides covering the transactions anterior to 1902, without objection; but before the proofs were actually closed the real facts, as above stated, were disclosed. Thereupon complainant obtained leave to amend the bill. At the same time the defendant obtained leave by consent to amend the answer as above recited. The proofs show that the corporation assumed the liabilities of its predecessor, the partnership. The theory of the defense now is that the statute continued to run until the bill was amended.

Under the authorities the question is whether the amendment asserted a new cause of action not contemplated by the original bill, or whether it was a mere explanation or amplification of the original cause of action. The law is well settled by Judge Sanborn, speaking for the Court of Appeals of the Eighth Circuit, in Patillo v. Allen-West Co., 131 Fed. 680, 65 C. C. A. 508:

"The rule of law upon this subject is that an amendment to a petition which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegation in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute so pleaded is arrested at that point; but an amendment that introduces a new or different cause of action, and makes a new or different demand, not before introduced or made in the pending suit, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed."

The following cases, cited by complainant's solicitor, seem to bear out the doctrine above announced: Tremaine v. Hitchcock, 23 Wall. 518, 23 L. Ed. 97; Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547; Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1141; Texas Pacific Ry. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864.

The theory of the original bill was that the defending corporation was liable for the unfair competition practiced during the entire period. This theory was acquiesced in by both parties sub silentio, in both pleading and proofs. Prior to this amendment there is not in the record any suggestion that defendant's liability was limited by reason of its former existence as a copartnership. When the fact of such former existence cropped out in evidence, the complainant saw fit to

amend and state the facts of assumption by the corporation of all liabilities of the firm. It amounted to an amplification of the averments, which, perhaps, was not necessary, but certainly was proper; but it did not change the attitude of the parties, or bring in any new cause of action within the meaning of the rule. Under the original pleadings the identity and liability of the Racine Paper Goods Company was assumed throughout. The amendment suggests circumstantially the reason why such original assumption was just and equitable. The amendment to the bill was made by consent of parties to make the bill conform to the proofs. I am persuaded, therefore, that the running of the statute was arrested by the bringing of the suit.

Without reciting the evidence more in detail, I am driven to the conclusion that defendant has been guilty of unfair competition and has thereby maliciously diverted and injured the trade of complainant; that against such unfair methods complainant could obtain no adequate remedy in the courts of law; that he has sustained substantial loss in his business, and is therefore entitled to an injunction and an accounting as prayed.

An interlocutory decree will be prepared in accordance with this opinion.