## EVERYBODY'S TOOL & DIE WORKS, Inc., v. COSTA.

### No. 7370.

District Court, E. D. New York.
Nov. 20, 1934.

Mock & Blum, of New York City, for plaintiff.

Fritz Ziegler, of New York City, for defendant.

MOSCOWITZ, District Judge.

This is a motion by the defendant for an injunction order against the complainant, restraining it from sending any notices to the button and buckle manufacturing trade or in any manner advertising the pendency of this litigation, if such notices name the defendant herein or make any reference to the Liberty Die & Button Mould Company, Inc.

The action was brought to restrain alleged infringement of Reissue United States Letters Patent No. 19,292, granted August 28, 1934, to the plaintiff herein as assignee of one Stephen Lerma. The patent relates to metallic blanks which complainant manufactures and sells to button and buckle makers who cover the blanks with fabrics of their own choice. The articles claimed to infringe were manufactured by Liberty Die & Button Mould Company, Inc., a competitor of the complainant, who sold the articles to the defendant. Because complainant and Liberty Die & Button Mould Company, Inc., do business in the Southern District of New York, where the District Court calendar is congested, suit was instituted against the defendant, a resident of the Eastern District of New York, for disposition in this court. Liberty Die & Button Mould Company, Inc., has assumed the defense of the action, through its counsel, and has agreed to eventually intervene as a party-defendant so that it shall be bound by any decree rendered in this cause.

After instituting action, counsel for complainant invited defendant's counsel to test the propriety of the following infringement notice proposed to be issued to the trade:

"Gentlemen: We are writing you on behalf of Everybody's Tool & Die Works, Inc. who are the owners of Reissue Patent No. 19,292. This Reissue patent is a reissue of original U. S. Patent No. 1,859,098 and the original patent was filed on February 25, 1932 and was issued on May 17, 1932.

"Patent suit has been filed against Beauty Button Works for infringing upon this patent. We are advised that Beauty Button

Works has secured the dies or moulds for making its buttons from Liberty Die & Mold Co.

"Every concern which uses molds in order to make devices which infringe upon said patent, is liable to an action for injunction, and an accounting for profits and damages.

"For your convenience we enclose a copy of said Reissue Patent No. 19,292 and we advise you that the purchase of the mold from anybody except our client, Everybody's Tool & Die Works, Inc., in order to make up devices such as those shown in the enclosed patent copy, constitutes a patent infringement, and will render you liable to legal action as aforesaid.

"Very truly yours,

"Mock & Blum."

This notice is objected to upon the ground that it contains the names of the defendant and Liberty Die & Button Mould Company, Inc. The sole affidavit in support of this motion is submitted by defendant's counsel. After stating the nature and status of the case, he concludes: "Deponent respectfully contends that the practice of advertising the pendency of a litigation, mentioning the name of the defendant and the name of the manufacturer who assumes defense of the suit, is improper and is a practice which a plaintiff in a patent suit should not be permitted to indulge in in advance of final hearing." Upon this bare conclusion this court is asked to predicate a finding that the proposed circular is rooted in malice and bad faith, and therefore its issuance to the trade must be restrained. Equity is not so easily stirred to the use of its power to enjoin.

In Adriance, Platt & Co. v. National Harrow Co. (C. C. A.) 121 F. 827, 829, the law as it obtains upon the subject of a patentee's right to issue infringement notices was stated in the following language: "Undoubtedly the owner of a patent is acting within his rights in notifying infringers of his claims, and threatening them with litigation if they continue to disregard them; nor does he transcend his rights when, the infringer being a manufacturer, he sends such notices to the manufacturer's customers, if he does so in good faith, believing his claims to be valid, and in an honest effort to protect them from invasion. The question whether the patent owner is acting in good faith in advertising his claims to the manufacturer's customers by circulars or letters can seldom be determined from the con-

tents of the communication alone, and, like all questions of intent, must generally be determined by the extrinsic facts."

The facts of the above-cited case disclose that the defendant had repeatedly issued circulars and letters to the complainant's customers informing them that the complainant's product was an infringement of its patent and threatening them with litigation if they continued to purchase the complainant's goods. The court determined that the defendant's refusal and neglect to settle the question of alleged infringement through legal action was sufficient to justify the finding that the circulars and letters were distributed with the malicious purpose of destroying the complainant's business, and accordingly an injunction restraining such acts was granted.

■ A patentee, under the pretext of acting in self-protection, cannot destroy a competitor's business by terrorizing its customers through the media of notices and circulars containing threats made in bad faith. If he fails to bring action against an alleged infringer, and instead thereof maliciously intimidates the latter's customers by warning them that they will subject themselves to suit if they continue to purchase its products, the inference arises that he has no confidence in his pretensions and a court of equity will interpose to restrain such acts, to prevent irreparable injury. This doctrine was first announced in Emack v. Kane (C. C.) 34 F. 46, and has been consistently followed by the federal courts. Dittgen v. Racine Paper Goods Co. (C. C.) 164 F. 85, affirmed (C. C. A.) 171 F. 631; Casey v. Cincinnati Typographical Union (C. C.) 45 F. 135, 12 L. R. A. 193; Commercial Acetylene Co. v. Avery Portable Lighting Co. (C. C.) 152 F. 642, affirmed (C. C. A.) 159 F. 935; Kelley v. Ypsilanti Dress-Stay Manufacturing Co. (C. C.) 44 F. 19, 10 L. R. A. 686; Computing Scale Company v. National Computing Scale Company (C. C.) 79 F. 962; Farquhar Company v. National Harrow Company, 102 F. 714, 42 C. C. A. 600, 49 L. R. A. 755.

■ Here, it is manifest, the complainant has shown its good faith by instituting the present action. It has demonstrated that it honestly believes its patent to be valid and infringed, and it therefore has the right to protect its claims from further invasion by notifying the trade of an alleged infringement through notices which contain no false, offensive, or opprobrious language. Warren Featherbone Co. v. Landauer (C. C.) 151 F. 130, 134; Computing Scale Compa-

ny v. National Computing Scale Company (C. C.) 79 F. 962; Mitchell v. International Tailoring Co. (C. C.) 169 F. 145; New York Filter Co. v. Schwarzwalder (C. C.) 58 F. 577.

The disposition of the present motion is controlled by the case of Warren Featherbone Co. v. Landauer, supra. There, after the complainant had instituted suit for alleged infringement of its trade-mark, it distributed notices and circulars to the defendant's customers advising them that it had brought action against the defendant and warning them against purchasing the defendant's goods. The defendant moved the court for an injunction order restraining the complainant from issuing such circulars and notices. The following notice is set forth in the opinion as a specimen of those distributed:

"Warning against Unfair Competition.

"'Three Oaks, Michigan, July 13th, 1903.

"'To the Trade: We desire to warn the trade against the purchase and sale of "Featherbone" products not made and sold by us. An imitation and inferior article is being offered to the trade under our trade-mark and name "Featherbone" and in the dress of our goods and in imitation of them.

"'We have brought suit against Landauer & Co., of Milwaukee, for dealing in these fraudulent imitations in unfair competition with us, asking for an injunction against such practice on their part and for five thousand dollars ($5,000.00) damages for their acts.

"'This imitation article is made in infringement of our patents and trade-marks and in unfair and fraudulent imitation of our goods, and we give this public notice so that the trade may understand our rights, our position relative thereto and our intention to stop infringement and all unfair competition.

"'The Warren Featherbone Co.'"

The court, in denying the defendant's motion, alluded to the doctrine of Emack v. Kane, supra, and stated:

"But it is evident, to bring a case within the doctrine so laid down, it should appear that the threatening letters and circulars should be resorted to in bad faith, which is generally shown, as was in that case, by the complainant neglecting or refusing to bring suit. In the case at bar the complainant has shown its good faith in bringing suit against the defendant, distinctly claiming a right of property in the fanciful designation of 'Featherbone' as a trade-mark, and charging the defendants with infringement. * * *

"It seems clear enough, from an inspection of the circulars sent out to customers by complainant, that the complainant has kept fairly within the scope of its bill; and so long as it does that no charge of bad faith or malice or intent to injure is justly chargeable. If complainant's bill be true, it has an undoubted right to warn the public against the infringement of its trade-mark; and that question should not be determined upon the mere allegations of the parties. It is easy enough to say that complainant has no trade-mark, or that, if it had, it expired with the expired patents in 1900 and 1902; but the proof on final hearing might show otherwise, and that the right to such trade-mark exists independent of such patents."

The language of the specimen notice in the case just cited was considerably stronger than that contained in the notice which complainant herein proposes to issue to the trade. And it is to be observed that the notice in said case specifically stated that an infringement action had been instituted against the named defendant. The court, none the less, denied the petition for an injunction, and nowhere in the decision is there to be found a statement or intimation that the complainant had transcended its right to protect its interest under the patent because it had stated the undeniably true fact that suit had been brought against the named defendant.

Complainant herein, having shown its good faith by instituting action to determine the question of infringement, cannot be denied the right to issue the proposed notice because it contains the names of the defendant and the Liberty Die & Button Mould Company, Inc. The proposed notice is unmistakable in its terms, contains no misstatement of fact, and conveys no information which a patentee in good faith is not justified in sending to the trade.

To the end, however, that the interests of the trade be better served, it is directed that the complainant attach a copy of its patent with each notice distributed, and to insert, in lieu of the first sentence of the second paragraph in the proposed notice, the full title of the within action and its file number and date of commencement in this court.

Motion denied.

Settle order on notice.