## CHURCHWARD INTERNATIONAL STEEL CO. v. CARNEGIE STEEL CO.

(District Court, W. D. Pennsylvania.    March 16, 1912.)

1. **Equity ⬤⇒359—Whether defendant has substantial interest, preventing voluntary discontinuance, is matter of discretion.**

While it is the general rule in equity, as at law, that plaintiff may withdraw or discontinue his suit on payment of costs, subject only to the qualification that the discontinuance shall not deprive defendant or others of any right, or have the effect of harassing or inconveniencing them, it is a matter of discretion with the chancellor whether defendant has a substantial interest which may be affected.

2. **Patents ⬤⇒313—Leave to discontinue infringement suit without prejudice denied, where defendant had gone to great expense in preparing defense.**

In suit for infringement of patent, in which defendant set up invalidity for lack of patentable novelty, want of invention by the patentee, and prior use, where defendant afforded complainant every opportunity to examine its engineers, superintendents, and foremen with a view to discovering infringement, and had gone to great trouble and expense to prepare its defense, complainant will not be given leave to withdraw or discontinue the action without prejudice to a new suit at any time when it can obtain more specific and complete information of defendant's methods of manufacture.

In Equity.    Suit by the Churchward International Steel Company against the Carnegie Steel Company.    On motion by plaintiff for leave to discontinue without prejudice.    Motion denied.

Duell, Warfield & Duell, of New York City, for complainant.

Charles C. Linthicum, of New York City, for respondent.

ORR, District Judge.    In each of the above cases the plaintiff has moved the court for leave to discontinue the proceedings without prejudice and the defendant has objected thereto.    Each proceeding is for infringement of letters patent for certain alleged improvements in heat treatment of alloyed steel.

In support of its motion the plaintiff has filed an affidavit to the effect that, in endeavoring to prove defendant's infringement before the date of the bill filed, complainant caused to be examined certain officers of the defendant company, but that complainant was not able to have produced any definite information as to the methods employed by the defendant in the manufacture of steel prior to the date of the filing of the bills.    The affidavit further contains the averment that no testimony was taken by the defendant, that no decree or order has been entered in the case, and that no cross-bill or prayer for affirmative relief has been filed on behalf of the defendant, and the affidavit fur-

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ther states that it is desired that the actions be discontinued without prejudice to complainant's right to recommence these actions against the defendant at any time when more specific and complete information of defendant's methods of manufacture before or since August 13, 1910, can be obtained.

From the answer by defendant in opposition to complainant's motions, it appears that the answers to the bills of complaint set up as a defense the invalidity of the patents for lack of patentable novelty, for want of invention by the patentee, and because of prior use, as appears by a large number of United States and British patents and a large number of publications. The answers to the bills set forth the names of a large number of persons who were alleged to have knowledge of the prior use of the invention in the United States. It appears also that the defendant afforded every opportunity to the complainant to examine defendant's engineers, superintendents, and foremen and that the examination of the witnesses took a long time, the deposition of one alone occupying about a week. The defendant further shows that it went to great trouble and expense to prepare its defense, having caused an extended and expensive search throughout the United States and foreign parts, and having conducted an extensive examination into the practical state of the art. The defendant states that, in addition to the matters of record referred to in the answer to the bill, many of the defenses upon which the defendant relies can be established only by persons who have actual knowledge of the facts, that all of the persons mentioned in the answer are now living and available, and that their testimony can now be procured, and defendant submits that, if the suits are dismissed with the right to complainant to renew them at some future time, the defendant will lose substantial rights, and that the defendant might and would be put in jeopardy by being unable to establish those of its defenses dependent upon the oral testimony of living witnesses.

[1] This court is unable to grant the motions on the part of the complainant. It is true that the general rule in equity, as well as at law, is that a plaintiff who has instituted his action may withdraw or discontinue the same upon the payment of costs. The sole qualification of the rule, as far as it is found in the books, appears to be that such withdrawal or voluntary dismissal or discontinuance should not have the effect of depriving the defendant and perhaps others of any right, or should not have the effect of harassing or inconveniencing the defendant and perhaps others. It has been held that the mere annoyance which may be incidental to a subsequent suit is not ground for preventing plaintiff's voluntary dismissal or withdrawal of his case. Where there is any other thing to be expected by the defendant as a consequence of plaintiff's withdrawal or dismissal of his action, the courts have been particular to examine the merits of plaintiff's voluntary withdrawal or dismissal. This is known from the universal rule existing in equity that a plaintiff may not withdraw his proceedings without an order of court. It is not probable that all causes which have led chancellors to refuse to plaintiffs the right to voluntarily dismiss their bills are to be found in the books, but it is clear that it is

a matter of discretion with the chancellor as to whether the defendant has any substantial interest which may be affected by the voluntary act of the plaintiff.

[2] The bills in these cases now before the court were filed on the 22d of August 1910, and the answers were filed on the 3d of November 1910. The applications for leave to dismiss were not made until recently. The defense in each case, not only with respect to infringement, but as to the validity of the patent, will depend upon the testimony of persons now living and available. The plaintiff, if it is permitted to withdraw the proceedings with a right to renew the same, may wait before bringing its new actions until some of the witnesses have died, and others have become unavailable. If new actions are brought, they may be of such nature that the material gathered by the defendant at great expense for use in the present actions would not be available in the new actions. There would be more prejudice to the defendant, if the motions of the plaintiff should prevail, than the mere annoyance incident to new litigation. It seems to the court that the defendant has a substantial right to have a determination of the question as to whether it is infringing the letters patent of the complainant. It would not be permitted that the complainant should repeatedly institute suits for infringement, and as often withdraw them.

Under some circumstances, a defendant who is charged with infringement may have a right to prevent assertions of infringement when the owner of the patent refuses to bring suit for the determination of the question. See Farquhar v. National Harrow Co., 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755, and Adriance, Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163. Then, too, it seems that the public has an interest in having the validity of a patent established where it is seriously questioned, because what is embraced within the patent belongs to the public and the patent itself is a grant by the public. The interest of the public appears to be greater in such controversies when they relate to manufactured products which are extensively used such as steel. It therefore seems important that the questions raised in these proceedings sought to be dismissed should be speedily determined. If the plaintiff's ground for dismissal has been because of some oversight in the preparation of the bills, or in some other matter which might have been avoided in new suits, there would be more substantial reason for permitting the complainant to dismiss the bills than the reasons given in these cases, to wit, that it has failed to find infringement after the opportunity afforded it by the defendant.

The defendant has such interest in this litigation that the motion must be denied.