**DERMAN v. STOR–AID, Inc., et. al.**

**STOR–AID OF NEW JERSEY, Inc., v. DEC-ORATIVE CABINET CORPORATION et al.**

**STOR–AID OF ILLINOIS, Inc., v. DECORATIVE CABINET CORPORATION et al. (DERMAN, Intervener).**

**DERMAN v. LUDWIG BAUMAN & CO.**

District Court, S. D. New York.

Dec. 7, 1943.

Bernard G. Nemeroff, of New York City (Bernard G. Nemeroff, Fred A. Klein, John J. Hart, Aaron L. Danzig, all of New York City, of counsel), for plaintiff Harry Derman; for defendants Decorative Cabinet Corp., Scientific Mothproof Corporation, and Harry Derman.

David M. Engelson, of New York City (David M. Engelson and W. Lee Helms, both of New York City, of counsel), for defendants Stor-Aid, Inc., Irving Blechman, Gimbel Brothers, Inc., and Ludwig Bauman & Co.; for plaintiffs Stor-Aid of New Jersey, Inc., and Stor-Aid of Illinois, Inc.

GALSTON, District Judge.

The main case of these four causes charges the alleged infringement of four letters patent issued to Harry Derman, the plaintiff. The answer, in addition to the usual defenses, sets up a counterclaim.

The patents present an interesting art, relating as they do to collapsible wardrobes of cardboard or the like material, readily transportable and easily assembled. The earlier art was concerned mainly with heavy closets or cabinets having separate sides, back, top and bottom parts and door panels. Such closets were assembled in the plant of manufacture with the use of bolts, nails and glue, and when sold were delivered so assembled.

Derman had been in that field of industry for many years before he hit upon the devices of his patents. In 1932 he experimented with a type of collapsible wardrobe capable of being manufactured in mass quantity, requiring fewer laborers, and at greatly reduced cost. Such experiments continued for a period of eight months, during which time he tested for his purposes such materials as fiber, veneer, pressboard and finally corrugated board. He found that by creasing a sheet of corrugated board about the size of a screen and standing it up, it was possible to form

a cabinet. He then set up a top and a bottom and assembled the three parts. These early experiments led him to attach an inside bottom with nails. Failure followed, for the closet fell apart, the outside walls spreading open. Thereafter he changed the construction by taking a sheet of cardboard and placing it over a flat surface, bending the creases to the top and attaching the top by means of spreaders. He also provided flanges for some parts integrally therewith, and spreaders or little thumbtack nails were used to maintain the parts in position. Such in outline was the preliminary work which led to patent No. 1,-933,099.

This patent, issued October 31, 1933, is the earliest of plaintiff's patents in suit. It relates to the construction of containers of the order of wardrobes or chests, or the like. The inventor sought particularly inexpensive material which would enable the cabinets to be sold at a low retail price and yet afford the user a strong, practical and durable construction. To accomplish this, as in his experiments, he selected a heavy fibrous material such as paper, cardboard, fiber board, or corrugated board. The side walls and cover were formed from a single sheet, with end walls detachable with respect to the foldable side walls and cover, consisting of a frame covered with a sheet of material similar to that employed in the side walls. The rails of the frame included grooves for receiving the edges of the side walls and means were also provided for securing side edges in connection with the frames. The free edge of the cover of the container has a depending flange adapted to enter the container and means for supporting the cover against accidental displacement. There are other details described in the specification, but the foregoing is a description of the general nature of the invention and the device involved. It will be sufficient to consider Claim 11, the broadest of the three claims in issue. It reads as follows: "A built-up container of the class described consisting of separate detachably connected parts, one of said parts forming the side and bottom walls of the container, said side and bottom walls being hingedly and collapsibly related to each other, two end walls, and said end walls being provided with peripheral means on three edges designed to engage and be secured to the outside of the ends of the aforesaid part when in set up condition."

During the trial the only issue raised as to Claims 11, 13 and 14 was invalidity, but now in defendant's brief it is argued that with respect to Claim 14 the defendant does not infringe, but that if the claim is interpreted in such a way as to cover defendant's structure then the claim should be held invalid.

One of the important patents relied on to show the state of the art is that to Friedel, No. 1,523,639, issued January 20, 1925. This patent is for a wardrobe and from it it appears that Derman was certainly not the first to conceive of the use of heavy cardboard instead of wood for the construction of a cabinet. Friedel specified that the body including the four sides, bottom and top and door be made of heavy cardboard; but such structure was to be "reinforced by relatively light wood frames." Friedel's object was to provide a readily portable cabinet which could be collapsed for transportation or storage. To do so it was necessary to remove bolts, brackets and hanging bar.

At once it is quite apparent that the ordinary householder would not readily be able to assemble or disassemble the Friedel devices. It seems markedly different from the Derman construction in that Friedel required a wooden frame fitted inside of the back of the door section to give body or support or function to the assembled unit. Friedel required these frames to carry the weight of the clothing to be suspended. The difficulties in re-assembling the Friedel device were revealed in the courtroom demonstration in connection with a specially prepared model made by the defendant.

The Friedel structure is certainly not an anticipation of the Derman cabinet. It has many more parts and the reinforcement frames are secured by glue or other suitable fastening means to form removable end heads for the cabinet. The Derman structure eliminated not only the wooden frames but also shows the walls upon the flat surface of the bottom, with the bottom flanged upward. Likewise Derman rested the top directly upon the side walls with the flanges downward along the outside of the walls of the closet. In the Friedel construction the flanges were used for the purpose of fastening the top and bottom to the grooves of the top and bottom frames. Friedel in addition to the frames required two strips which fitted on the outside of the wardrobe.

The defendants rely also on the patent to Hofman, No. 1,270,294, issued June 25, 1918. This patent relates to a shipping box and is interesting as disclosing a construction made of heavy cardboard, paper, fiber or other flexible material. The structure comprises a body including a bottom, sides and top portions which overlap one another when the box is closed. The inventor states that it may be formed of either one or more pieces as may be preferred. It is held together by end portions including an end wall that is inset from the end of the body portion. Integrally attached to the end walls are inner walls, each wall adjacent to the inner surfaces of the body, while outer walls are integrally included with the inner walls and adapted to lie adjacent to the outer surfaces of the body. These inner and outer walls afford bracing and holding means for the walls of the body. The end wall is held in place by means of staples or rivets which pass through the outer and inner walls and the intermediate portions of the body. The inventor says that instead of using rivets or staples he may employ a wire thread. The Hofman patent is not an anticipation of the Derman device, for its utility depends upon the inner frame members.

Other patents of the prior art are relied on not as anticipations but to show that no invention was involved in Derman's contribution to the art.

The patent to Green, No. 573,782, issued December 22, 1896, shows the lip member of the Derman cover, and a one piece cardboard body member, but with inner end frames which are essential to the structure.

Bliss patent, No. 1,430,149, issued September 26, 1922, is for a shipping case manufactured of fiber-board from a body blank and two end blanks. This construction required, as the patent discloses, wire stitching in sealing the box as well as the use of staples. To direct the fasteners which are driven in from the outside a blade-like anvil is provided.

Patent No. 797,201 to Hale, August 15, 1905, was for a collapsible box, but discloses nothing more of interest so far as the art in suit is concerned. However, I note that the bottom of the box has a turned up edge. On the other hand, the side is permanently, though flexibly, connected to the bottom, so that the collapsible main portion may be folded down thereon. The cover fits over the top of the main portion, and to hold the main portion extended Hale provided a flexible fastening such as tape to one of the sides. These tapes are important for the functioning of the box.

Cady patent, No. 1,302,507, issued May 6, 1919, is for a box formed of paper board. The box body comprises side and end panels and is made from a sheet of paper board and is provided with flexible metallic corner strips. The wings thereof are secured on the outer surfaces of the sheet by staples or rivets, over the lines where it is to be bent to form the box corners, and at its ends to form there the connecting joint. The strips are attached at the factory at the corners to form a complete body unit and permit the unitary box to be collapsed or folded into a flat form.

The Schulz patent relates to what is described as a knock-down closet. The closet is one having three sides separately secured together with a door frame detachably secured to the front edges of two of the sides, and the door hinged to one side of the frame. No one part forms the side and bottom walls of the container as defined in the Derman patent.

The Burton patent is very old and shows nothing more than a bureau in which the parts may be readily dismembered. The parts are separate and may be re-united by the process of dovetailing common in wood construction.

Beerling patent, No. 655,952, issued August 14, 1900, is for a knock-down case. The base comprises a frame, one of the sides having a channel formed along its inner edge with an upwardly projecting flange, a central panel secured to the flange and overlapping said channel. This is in combination with a side section adapted to engage slidingly with the channel and having a lateral projection extending beneath the overhanging portion of the panel. Beyond the reference to the flange the patent has no bearing, for the device shown is of multiple parts.

Patent to Leiman, No. 1,097,450, issued May 19, 1914, covers a shipping crate, and was not intended for disassembling. The patentee writes: "an object of the invention is to provide a crate construction wherein all of the securing means are accessible from within the box only, so that it will not be possible to disassemble the box from the outside without doing such damage to the box as would come to the notice of one receiving the box."

Thus no one patent of the prior art shows a cabinet or a container of the class described, i. e. a collapsible wardrobe or article of similar construction consisting of separate detachable connected parts, one of the parts forming the side and bottom walls of the container and having the side and bottom walls hinged to each other and collapsibly related to each other with two end walls having peripheral means on three edges to engage and to be secured to the outside of the ends of the part first mentioned.

██ Since there is no anticipation, it must be concluded that the Derman structure was new. As for utility, that is proved beyond any question of doubt. The remaining consideration is whether it discloses invention. Of course, one must be mindful in the determination of this issue of the rigid test suggested in recent Supreme Court cases, particularly in Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. On the other hand, due regard must be given to the outstanding commercial success of the Derman wardrobe. Since 1933 between twenty-five and thirty millions of the units have been sold at a price in excess of thirty million dollars. Surely in view of the old principle, not overruled even in recent Supreme Court decisions, that where invention is doubtful the commercial success may determine the balance of the scales, it would seem that the present case presents a convincing example of a substantial contribution to the art. Of course, commercial success of itself is an unconvincing factor, for it may result from any of a multiplicity of causes, i. e. management, superior advertising, control of the industry or the like. In this case, however, the sales were effected by a modest manufacturer, and the record fails to disclose any reason for the outstanding commercial success other than the need which the device met in the trade. Nor in this consideration of commercial success should one ignore the tribute which the defendant Blechman paid to the patent. Shortly after the Derman wardrobe was marketed, the Odora Company, of which company the defendant Blechman was president, copied the article. Then following the issuance of the Derman patent Blechman negotiated a license from Derman for that company. The Odora Company remained a licensee for about ten years, and during that time paid $175,000 in royalties to the patentee.

So if the matter of invention were doubtful as involving a study only of specific means to hold the parts in place and yet offer a readily collapsible structure easy to re-assemble by the lay household purchaser, I have no hesitation in reaching the conclusion that this patent presents a case in which the doubt should be resolved in favor of the patentee. The utility of the patented structure has been referred to, and merit should be accorded the simplicity of the device, the relatively few parts required, the ease with which they can be assembled by the lay consumer, and the readiness of transportation. Moreover, though the structure is essentially of cardboard, the wardrobe is strong enough to support from fifty to one hundred pounds of clothing. Finally, mass production was made readily possible with attendant lowered costs.

Derman patent, No. 2,009,482 was issued July 30, 1935 on an application filed October 28, 1933. This patent also, like the earlier patent, relates to improvements in wardrobes, closets and the like, and is stated to be an improvement on patent No. 1,933,099. Only Claim 2 is alleged to have been infringed. The defense is invalidity. The claim reads as follows: "A built up container of the class described consisting of separate detachably connected parts one of said parts comprising a single sheet of material consisting of hingedly and collapsibly related wall members forming the back and side walls only of the container, the free edges of the side walls being in alignment with said walls and directed forwardly, two substantially similar end walls, means on the end walls for coupling the same with adjacent edges of the walls of the first named part, and a door unit including a wooden frame overlying the edges of the side walls, and having grooves receiving the free edges of said side and end walls for attaching said free edges to said frame within the boundary edges of said frame, and a door member hingedly mounted within the boundaries of said frame."

██ Here again we find no one patent which anticipates the structure defined in the claim. However, the claim adds very little to the disclosure in the earlier patent which would justify an award of validity. The feature added is "a wooden frame" overlying the edges of the side walls and having grooves to receive the free edges of the end wall members so that a door mem-

ber may be unitarily mounted within the boundaries of the frame. Grooving a frame for the purposes indicated in the claim involved nothing more than mechanical skill. Indeed, the patent to Schleicher, No. 1,116,632, issued November 10, 1914, for a shipping box, discloses a structure wherein the frame is grooved to receive a body part, and, of course, the mere substitution of material, without more, does not involve invention. Accordingly Claim 2 of Derman patent No. 2,009,482 must be held invalid for want of invention.

■ Derman patent, No. 2,274,048 was issued February 24, 1942, on an application filed February 3, 1940. This patent relates also to containers, cabinets and the like. Claims 1, 2, 4 and 5 are alleged to have been infringed and the defense to this patent is non-infringement.

This defense seems well grounded for each of the four claims involved includes as a part of the structure end walls having portable cover parts in addition to the primary cover member. Defendant's structures in evidence show a single cover and no hinged or foldable supplemental parts as required by these claims.

■ Derman patent, No. 2,274,533, was issued February 24, 1942, on an application filed April 3, 1940, and relates to a door frame for collapsible closets. Claims 6 and 7 are alleged to be infringed by defendant's structures. Invalidity is urged as a defense to both of these claims, and in addition it is alleged that the defendant did not infringe Claim 6 of the patent. Claim 6 reads: "In a cabinet of the class described employing a door frame formed by spaced vertical rails and top and bottom transverse strips, a pair of door members slidably engaging said vertical rails in controlling the door opening, said doors overlapping one another in moving either door into open position, and means on at least one of said doors for supporting the free end in the path of movement of the overlapping end of the other door thereby establishing frictional engagement between overlapped portions of the doors to frictionally support the open door in a partially open position."

It does not appear that any of defendant's structures includes means "on at least one of the said doors for supporting the free end in the path of movement of the overlapping end of the other door, *thereby establishing frictional engagement between overlapped portions of the doors to frictionally support the open door in a partially open position.*"

Claim 7 reads: "A door frame unit for knockdown cabinets having collapsibly related back, side and top and bottom wall parts, the side wall parts having front wall portions, said unit comprising upper and lower transverse strips, spaced vertical rails joining the transverse strips inwardly of the ends thereof leaving the ends of said strips protruding beyond outer edges of said vertical rails onto the front wall portions of the cabinet, the protruding ends of said strips extending the frame unit to the side wall parts, said vertical rails extending the full height of the frame unit of the cabinet as defined by said transverse strips, opposed inner surfaces of said vertical rails having door supporting channels longitudinally thereof, a pair of door members movably supported in and forming part of said unit, and free edges of said door members having reinforcing strips."

This claim obviously adds merely specific elements to the general collapsible structures covered by the broad claims of the first Derman patent. Such development of detail is evidence of mechanical skill rather than invention. The patent cannot stand up under either the test of substantial contribution to the art, or the flash of genius test, and indeed Claim 7 is almost completely anticipated by Blechman patent No. 2,183,131, issued December 12, 1939. This latter patent relates to receptacles having a sliding door such as the door frame unit of Claim 7 of the Derman patent. It is true that Blechman does not specify that his door frame is made as a rigid unit, but neither does the Derman claim. Nor does the argument that the channels of the Blechman device support the door in but one direction constitute such a distinguishing feature of the Derman device as would warrant the inference of invention. Again applying the measure of substantial contribution to the art or flash of genius as a determinant of invention, it cannot be inferred that the specific door frame structure added to the basic principle of construction disclosed in the main Derman patent constitutes more than mechanical skill. Accordingly Claims 6 and 7 must be held invalid.

■ There remains for consideration the counterclaim. The defendants allege unfair competition in that the plaintiff filed the complaint knowing that it was

without basis and for the purpose of damaging their trade.

It appears that the complaint was filed March 3, 1942, and that prior thereto the plaintiff had published in Women's Wear a page advertisement directed to jobbers and retailers wherein it is stated that the plaintiff was the originator of collapsible storage wardrobes and was the owner of eleven United States patents, all listed, covering the construction and improvements used in the manufacture of such wardrobes and chests. The advertisement contains also an announcement that it was Derman's intention to maintain the good will which had been created by licensees named as the Decorative Cabinet Corporation and the Scientific Moth Proof Corporation and Odora Company, Inc., and to protect them from infringement. There is nothing in this advertisement that is subject to criticism. The warning sent out was entirely within Derman's rights. No evidence of malice or bad faith was proved at the trial and indeed the opinion of this court in respect to the main patent shows that the plaintiff had valid basis for asserting his rights. See Flynn & Emrich Co. v. Federal Trade Commission, 4 Cir., 52 F.2d 836; Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 41 F.2d 668; United States Galvanizing & Plating Equipment Corporation v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856; Adriance, Platt & Co. v. National Harrow Co. et al., 2 Cir., 121 F. 827. Moreover, the record shows that the advertisement was inserted only after the plaintiff had conferred with his counsel. That is also true of his letter to the trade sent after the present suit had been started.

The finding must be that the plaintiff acted in good faith in the belief that he had a good cause of action against the defendants. Accordingly the counterclaim will be dismissed.

The record shows that the defendants from November, 1941, when they commenced to infringe patent No. 1,933,099, to the filing of the complaint, sold 102,824 infringing units for which they received a total of $198,981.23. The proof discloses that 10,305 units were sold under 80¢ per unit, and 92,519 units were sold for 91¢ per unit, and that calculated on the basis of the royalties which had prevailed when the Odora Company, Inc. had paid license fees, the plaintiff would be entitled to a judgment of $5,783.95 against the defend-

ants. But whether all of the foregoing units infringed patent No. 1,933,099 is not readily determinable from the record. Accordingly the matter will have to be referred to a special master for such determination unless the stipulation reported on page 121 of the record can be amplified to meet the facts. The damages to be awarded will be calculated on the basis of royalties which prevailed on such constructions when the Odora Company, Inc. was a licensee. Treble damages will not be allowed.

The judgment will provide for the dismissal of the causes of action relating to the alleged infringements of the other three patents in suit; and the defendant's counterclaim will also be dismissed. The complaint in the action brought by the Stor-Aid Company of New Jersey against the Decorative Cabinet Corporation, the Scientific Moth Proof Corporation and Harry Derman, and the complaint in the action of Stor-Aid of Illinois against the same defendants will be dismissed.

The action of Harry Derman v. Ludwig Bauman & Co. has been discontinued.

The jury having been waived, appropriate findings of fact and conclusions of law will be filed pursuant to Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.